John Howard Joynt, of Washington, D. C., for appellee.

27 C.C.P.A.(Patents)

**BECKET v. ARNESS.**

**Patent Appeals No. 4320.**

Court of Customs and Patent Appeals.

June 24, 1940.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The Board of Appeals of the United States Patent Office affirmed the decision of the Examiner of Interferences in awarding priority of invention defined by the one count involved to William B. Arness, the appellee, and the appellant, Frederick M. Becket, has appealed here from its decision.

The interference is between an application of Becket, filed August 14, 1934, which ripened into patent No. 2,056,766 on October 6, 1936, and an application of Arness filed November 28, 1936, seven weeks after the date of the Becket patent. Upon the filing dates, Arness was the junior party. He based his right to contest priority of invention of the single count involved upon the disclosure of his earlier application filed July 20, 1933, which ripened into a patent No. 2,069,203 on February 2, 1937.

Arness moved to shift the burden of proof, relying upon his first-filed application for disclosure of the subject matter of the count. The Primary Examiner was of the opinion that Arness had clearly disclosed in his original application the subject matter of the count and sustained his motion to shift the burden of proof.

No testimony was taken by either party.

The Arness original application of July 20, 1933, which ripened into a patent never contained claims to the *exact* subject matter involved in this interference.

The invention in issue relates to the method of producing sound, fine-grained chromium iron alloys. A pre-alloy containing iron and chromium in the ratio of about 60 to 70 per centum and nitrogen from .5% to 1% (the ratio of nitrogen to chromium in the pre-alloy being about 1:140 and 1:75) is added to the melt containing iron and the melt is then cast. The introduction of nitrogen to the melt in the manner described precludes the evolution of gaseous nitrogen and results in sound castings being produced rather than spongy, undesirable ones.

The sole count involved is a modified claim from the Becket patent and reads as follows: "The process of producing sound, fine-grained chromium-iron castings which comprises forming a melt containing iron; adding to the said melt an iron-chromium-nitrogen prealloy containing about 60% to 70% chromium and .5% to 1% nitrogen, the ratio of nitrogen to chromium in said prealloy being between about 1:140 and 1:75; and then casting the melt."

■ The single question raised here, according to appellant's brief, is: "Does Arness' first application, Serial No. 681,-371 * * * disclose the invention in issue with sufficient particularity to entitle him to its filing date, July 20, 1933, as a date of conception and constructive reduction to practice?"

Appellant has called attention to the fact that a party by the name of Russell Franks, a business associate of Becket, in September 1933 circulated among those interested in the steel industry an article in "The Iron Age" disclosing the involved invention, and appellant states that it was not until after one Ostrofsky, whose application was filed in 1936, and which is owned by Arness' assignee, had been placed in interference with the instant Becket application that any disclosure of the *exact* invention responding to the limitations in the count was ever claimed by Arness and that then he never claimed it until after it appeared in the Becket patent. Becket argues in effect that Arness was spurred into activity. We see no application of the "spurred-into-activity" doctrine here, the principle announced in Mason v. Hepburn, 13 App.D.C. 86, is not invoked by appellant, and we regard the said alleged conduct of Arness or his assignee as having no bearing upon the decision of the instant issue.

Appellant before the tribunals below raised several questions, such as estoppel *in pais* and laches, which he concedes need not be decided here.

It is conceded by all that the earlier application of Arness disclosed a broad range of chromium and nitrogen in the pre-alloy which would include the narrow range specified by the count. The Examiner of Interferences, in holding that the early Arness application fully disclosed the subject matter of the count in issue, approved, without repeating, the language used in the decision of the Primary Examiner on the motion to shift the burden of proof, which language we repeat here:

"The party Arness asserts that the subject matter of the count in issue has a basis therefor in the Arness application Ser. No. 681,373, filed July 20, 1933. On page 9, lines 4 to 6 of said application, reference is made to an Ostrofsky application Ser. No. 681,371, filed on the same day, and having a common assignee. Thereafter, on Jan. 18, 1935, by amendment to page 9, line 6 of the Arness application Ser. No. 681,373, the composition of the alloy disclosed in Ostrofsky was introduced into the Arness application. The matter so introduced defines a composition containing 50% to 72% chromium, 0.5% to 15% nitrogen, and preferably,

59% to 60% chromium, and 0.5% to 7% nitrogen.

"The party Becket asserts that the composition just mentioned has no basis therefor in the Ostrofsky application as originally filed, nor in the Arness application. Such contention is not sound. The Ostrofsky application contains a basis for the matter in question, in original claim 8 which discloses a chromium content between 50% to 72%, and a nitrogen content between 0.5% and 20%, and in original claim 10, which discloses a nitrogen content of 2% to 6%. The Arness application has a basis for the use of the pre-alloy disclosed by Ostrofsky in the statement beginning at page 8, line 2 from bottom, to page 9, line 8. The contention of the party Becket that said passage does not disclose the use of the composition disclosed in Ostrofsky is regarded as unsound. The passage expressly states that the alloy disclosed in Ostrofsky may be used. The alloy may, on the other hand, be made by other methods than disclosed by Ostrofsky, as well as by the Ostrofsky method.

"The party Becket further contends that the Arness application Ser. No. 681,373 does not disclose that the chromium and nitrogen be added simultaneously and in the proportions claimed.

"The contention relating to the simultaneous addition of chromium and nitrogen is not sound. The pre-alloy simultaneously introduces both elements. If the contention is meant to distinguish between the procedure wherein the pre-alloy is added to a bath containing iron, as disclosed by the party Becket, and the bath containing iron and chromium, as disclosed in the particular embodiment of the party Arness, it is held that the alleged distinction has no bearing on the count in issue. The count in issue is broad enough to optionally include chromium in the melt to which the pre-alloy is added because the term 'containing' is used.

"The contention that the party Arness does not disclose the proportions in Ser. No. 681,373 is not sound. In view of the disclosure of the broad ranges of chromium and nitrogen, mentioned above, it is held that the narrower ranges of 60% to 70% chromium and 0.5% to 1% nitrogen find a basis therefor in the said application, In re Wemple and Daesen v. Peirce and Andersen, 458 O.G. 442, 1935 C.D. 428 [75 F.2d 998], 22 C.C.P.A. [Patents] 1064. The conclusion that the Arness application has a basis for the ranges just indicated, necessarily leads to the conclusion that said application likewise has a basis for the range of ratios between 1:75 and 1:140, inasmuch as the ratios are directly obtained by simple calculation from the ranges of the upper and lower limits of the chromium and nitrogen. The ranges of ratios so obtained are 1:60 and 1:140, which embrace the ranges of 1:75 and 1:140 specified in the count. The party Becket asserts that the party Arness cannot make the claims dealing with the narrower proportions even though they fall within the broader disclosure of the party Arness, on the ground that the party Arness did not recognize the critical relationship associated with the narrow range. This contention is not considered sound for the reason that the party Arness asserts that he produces sound steel in the proportions disclosed by him. So far as is evident in the record sound steel is produced when using the broader ranges as well as when using the narrower ranges."

The reasoning and findings of the Examiner of Interferences, based upon those of the Primary Examiner, were approved by the Board of Appeals.

We have carefully considered the disclosure of the said Arness original application and are of the opinion that the invention at bar was broadly disclosed therein and that the tribunals were right in holding that said original application was such a disclosure as would properly form the basis for making the count in this interference proceeding.

A case considerably in point with the issue here involved is Wemple et al. v. Peirce et al., 75 F.2d 998, 999, 22 C.C.P.A., Patents, 1064. There the range of the component material of zinc base alloy in the two applications involved formed the basis of substantially the same contention as is made by appellant here. There it was contended that both parties sought to accomplish different purposes and here it is contended by appellant that he obtains a useful result not taught or appreciated by Arness. The court in that case quoted with approval the following language of the Board of Appeals: "* * * It is therefore seen that the senior party has disclosed not only the alloying of the particular metals recited in the counts but in percentages embracing the ranges defined in the counts. While alloy No. 3 contains

a higher manganese percentage than recited in counts 1 and 2 it is well within the range .01 to .75 parts recited in the Wemple and Daesen application disclosure."

Later in the decision is found the following: "We agree with the Board of Appeals that the results obtained or sought are not controlling. The counts are clear and unambiguous. *The party securing the patent is clearly entitled to protection in the use of all substantial parts of the ranges covered.* Appellees disclosed the ranges, and upon the record presented are entitled to the award of priority. [Italics ours.]"

It is at once apparent that if the limitations with reference to the narrow range which are within the broad range disclosed by Arness lend patentability to the count over prior disclosures, then it would be difficult to see how it could be logically held that the original Arness application disclosed the issue of the count. The count is, in substance, a claim allowed by the Patent Office in the Becket patent. The patentability of the count, or its validity, is not a matter of concern here.

Sometimes invention rests in producing new, useful and unanticipated results by discovering that an intermediate range of proportions of a component material may be critical, so critical as to be not a question of degree but one of kind. As we understand the decisions below it is held that no such a situation is presented in deciding the present issue. With reference to the anomaly which has been hereinbefore pointed out, it is interesting to note that the Examiner of Interferences in his decision said: "Since the earlier application of Arness now patent 2,069,203 contains claims (i. e. 3 and 6) which are not materially or patentably different from the claim in issue, a recommendation under Rule 126 will be made that claims such as that in issue be not allowed in the application of the winning party Arness over claims already obtained by Arness in his patent for the same subject matter."

While the Board of Appeals did not comment upon the above-quoted suggestion of the Examiner of Interferences which reflects upon the validity of the claim in the Becket patent, it did say: "* * * There is no such marked and unexpected outstanding result true of one portion of Arness' range as to exclude him from use of that portion of his range, in favor of a later applicant. The matter is regarded as merely one of a few routine tests after the principle of the method has been disclosed as it has in the Arness applications."

Appellant has argued in this court at great length that the limitation of the claim may not be ignored, citing many authorities. It is our view that the limitation has not been ignored by the Patent Office tribunals but it is found that the elements of the limitation have been clearly disclosed in the earlier filed application.

The party Becket has argued at great length that since Arness challenged the validity of Becket's issued patent and seeks to extract the invention claimed therein by filing an application after the issuance of the Becket patent, the burden rests upon Arness to prove his case beyond a reasonable doubt. Becket further urges that there is no "clear, concise, exact, or full disclosure of the invention in issue" in the original Arness application, and that he has failed to sustain his burden of proving his case beyond a reasonable doubt.

The facts in this case which have been hereinbefore stated afford no basis for the application of the rule relating to the burden of proving one's case beyond a reasonable doubt. See Sachs v. Wadsworth, 48 F.2d 928, 18 C.C.P.A., Patents, 1284.

However, in any event, it is our view that since Arness' first application does fully, clearly and concisely disclose the invention in issue, he is entitled to rely upon the same for conception and reduction to practice of the invention involved, and that the Board of Appeals was without error in affirming the decision of the Examiner of Interferences in awarding priority of invention defined by the count at bar to Arness, and its decision so doing is affirmed.

Affirmed.