CRUCIBLE STEEL COMPANY OF AMERICA, Plaintiff,

v.

David L. LADD, Commissioner of Patents, Defendant.

Civ. A. No. 2459-61.

United States District Court
District of Columbia.

Nov. 12, 1963.

Raymond J. McElhannon, Alfred L. Haffner, Jr., Ward, Neal, Haselton, Orme & McElhannon, New York City, Richard C. Sughrue, Washington, D. C., for plaintiff.

Clarence W. Moore, Solicitor, Washington, D. C., for defendant.

JACKSON, District Judge.

This is a civil action brought by the plaintiff, Crucible Steel Company of America, under Title 35, Section 145 of the United States Code, to authorize the defendant, Commissioner of Patents, to issue to plaintiff Letters Patent containing claims 48 through 53, inclusive, of application Serial No. 577,461, filed by Robert I. Jaffee and Horace R. Ogden on April 11, 1956. This application is a continuation-in-part of various earlier filed applications.

The claims in suit are substantial copies of claims 1 through 6, inclusive, of Letters Patent No. 2,864,697, granted December 16, 1958, to Mallory-Sharon Metals Corporation, as assignee of the inventors, Busch et al. Those claims were added by amendment to the Jaffee et al. application for the purpose of instituting an interference pursuant to Title 35, Section 135 of the United States Code.

The tribunals of the Patent Office ruled that the claims in suit were not properly supported by the disclosure of the Jaffee et al. application, and the only issue before the Court is the correctness of that decision. The issue of whether a disclosure supports the claims is a question of law. Watson v. Bersworth, 102 U.S.App.D.C. 182, 251 F.2d 898 (1958).

Claims 48 and 51 are illustrative of the claims in suit and read as follows:

"48. A rolled heat treated titanium base alloy sheet product formed of a titanium base alloy consisting of 14% to 16% vanadium, 2% to 3½% aluminum, and the balance titanium with incidental impurities; said product being characterized by hav-

ing in the solution-treated condition a ratio of yield strength to ultimate tensile strength from about 0.9 to as low as 0.5."

"51. A rolled heat treated titanium base alloy sheet product formed of a titanium base alloy consisting of 15% vanadium, 2½% aluminum, and the balance titanium with incidental impurities; said product being characterized by having in the solution-treated condition a ratio of yield strength to ultimate tensile strength from about 0.9 to as low as 0.5, and said sheet product having a yield strength in excess of 160,000 p.s.i. and an ultimate tensile strength in excess of 175,000 p.s.i. when aged at 900° F. after solution treatment."

The Jaffee et al. application relates to titanium base alloys containing one or more of the alpha stabilizers aluminum, tin, and antimony, and one or more of the beta stabilizers molybdenum, vanadium, manganese, chromium and iron. The alpha stabilizer content of the alloys ranges from 1% to 10% for aluminum, 1% to 23% for tin, 1% to 19% for antimony, or the equivalent, for combinations thereof. The beta stabilizer content ranges from 1% to 15% for molybdenum, 1% to 8% for manganese, 1% to 10% for chromium, 1% to 5% for iron, and 2% to 20% for vanadium. Alloys within those composition ranges can be made more readily formable by solution treating and quenching before forming. This treatment imparts to the alloys a relatively low yield strength with a large spread between yield strength and ultimate strength. Furthermore, the alloys can be strengthened after forming by an age hardening heat treatment.

The Busch et al. patent discloses titanium base alloys, which, after solution treatment, have a relatively low yield strength, and a large spread between yield strength and ultimate strength to permit ease in forming, and which, after forming may be aged to high strength levels. The claims of this patent are directed to alloys containing 14 to 16% vanadium, and 2 to 3½% aluminum.

As stated hereinbefore, the sole issue in this case is whether the disclosure of the Jaffee et al. application will support the claims copied from the Busch et al. patent.

It appears to the Court that the case of Rem-Cru Titanium, Inc. v. Watson, 152 F.Supp. 282 (D.C.D.C.1957) is controlling. In that case, the application related to alloys containing titanium and two or more other elements. The specification indicated that those elements acted as stabilizers of the beta phase of the titanium base alloy, and that by using a sufficient amount of those elements, a mixed alpha-beta phase structure could be obtained at normal temperature.

The applicant, Vordahl, added by amendment claims 1 to 12, inclusive, of the Pitler patent No. 2,640,773, for the purpose of instituting an interference. The copied claims were directed to a titanium base alloy which was similar to the alloy disclosed in the Vordahl application except that the broad ranges of the alloying elements disclosed by Vordahl encompassed the more limited ranges of the alloying elements recited in the claims. Furthermore, the Vordahl application disclosed no specific example within the alloy range claimed by Pitler. The Patent Office rejected those claims on the grounds that the disclosure in the application did not provide adequate support for them.

The evidence introduced at trial showed that there was no distinction in operating within, as well as without, the narrow Pitler alloy range as long as one stayed within the broader Vordahl alloy range, insofar as the results obtained were concerned. Moreover, the Court found that one with ordinary skill in the art, reading the Vordahl application, would not need a statement in the Vordahl application of the particular narrow alloying ranges in order to make Pitler's claimed alloys.

In that case, the Court held that the disclosure in the Vordahl application pro-

vided adequate support for the claims copied from the Pitler patent.

In the instant case, as in Rem-Cru Titanium, Inc. v. Watson, supra, the range of alloying elements disclosed by the application encompasses the range of alloying elements recited in the copied claims. It was shown that there is no significant difference between the properties of the alloys made within or without the narrow range recited in the copied claims so long as the alloys are within broad range as disclosed by Jaffee et al. Moreover, the fact that Jaffee et al. did not disclose an example within the narrow range specified in claims 48 to 53 should not preclude them from coverage of the entire broad range that they disclose, especially when the evidence at trial clearly showed that it would be obvious to one of ordinary skill in the art, using the teaching of the Jaffee et al. application, to make alloys within the narrow alloy range recited in the claims.

It is noted that the Rem-Cru Titanium, Inc. case is supported by Wemple et al. v. Pierce et al., 75 F.2d 998 (C.C.P.A. 1935) which also involved an "embracing" range. See also Becket v. Arness, 112 F.2d 1011 (C.C.P.A.1940).

Both counsel for defendant and the tribunal of the Patent Office relied on Arness v. Franks, 138 F.2d 313 (C.C.P.A.1943), to support the rejection of the claims in suit, but the Court is of the opinion that the facts here are distinguishable from the facts in Arness v. Franks, supra. In that case, the applicant, Arness, had copied claims from a patent issued to Franks for interference purposes. Arness relied on an earlier filed parent application, ante-dating Franks' filing date for priority. On a motion to dissolve brought by Franks, the issue was whether or not the parent application supported counts which recited a steel alloy of a specified composition including "not over 3% of metal selected from the group consisting of nickel and mixture of nickel and copper". The parent application disclosed an alloy having nickel "up to 30%", and

in the specification there was an example of a steel alloy containing 8% nickel.

The Court of Customs and Patent Appeals affirmed the Board of Interference Examiners, and held that Arness could not make the counts on the ground that the recital of "not over 3% nickel" in the count was critical in the Franks patent. That decision was based on the effect that the percentage of nickel had on the impact strength of the alloy, and also on the fact that the Arness parent application was directed primarily to austenitic steels, whereas the Franks patent emphasized that his steel alloy was ferritic.

Here, however, there is no reason why it would not be obvious, knowing the broad range of alloying elements disclosed by Jaffee et al., to make alloys within the narrow range of alloying elements recited in the copied claims, especially since there the properties of "narrow range" alloys are not significantly different from the properties of the "broad range" alloys. Also, the evidence introduced by counsel for plaintiff clearly showed that the Jaffee et al. application, and the Busch et al. patent, were both directed to a similar type of titanium alloy.

Counsel for defendant also relied on the In re Draeger et al., 150 F.2d 572 (C. C.P.A.1945) case to support their position. However, in that case, involving a method for continuously reacting saturated tertiary hydrocartons and olefins, applicants disclosed factors from which could be calculated rates of flow having a range of "traverse times" from 36.9 seconds to either 147 or 822.8 seconds. On the basis of that disclosure, applicants sought to claim a range of "traverse times" of "less than 45 seconds", or "less than 70 seconds". The Court held that the disclosure would not support such recitations since the claimed "traverse times" fell outside the ranges taught by applicant.

In the present case, applicant is not trying to claim ranges outside those taught by his disclosure, but rather within the range taught by him.

The Court deems it unnecessary to discuss the other cases relied upon by the defendant to support its contention since the facts in those cases are readily distinguishable from the facts in this case.

The foregoing Opinion contains Findings of Fact and Conclusions of Law. Accordingly, the Court finds for the plaintiff and against the defendant, and judgment will so issue.