## BOYD *v.* CHERRY.

*(Circuit Court, D. Iowa, E. D.  January, 1888.)*

1. PATENTS FOR INVENTIONS—ANTICIPATION—PRIOR USE—MILK CANS.

The Cooley patent of September, 1879, covers "a new process of raising cream from milk," and, as stated by the specifications, "consists mainly in water-sealing the milk within the vessel containing it, and also in submerging such vessel in water, and in apparatus hereinafter described;" the object being not only to exclude dust and dirt, but also to prevent the absorption of deleterious gases or odors from the air, and the exposure to sudden changes, electric, thermal, and otherwise, of the atmosphere. *Held,* that the patent is valid, although other persons had been in the habit of occasionally submerging vessels containing milk, as they never proceeded so far as to discover the importance of the method or the valuable results achieved by the patentee.

2. SAME—INFRINGEMENT.

The patent is infringed by a milk can manufactured under the Cherry patent, which describes a substantially similar apparatus, and purports to accomplish the same ends in substantially the same way; and infringement cannot be avoided on

the theory that the Cherry patent is for a device, while the Cooley patent is for a process, especially when it appears that the Cherry apparatus was sold with direction for using it according to the Cooley process.

**3. SAME—PATENTABLE PROCESS.**

By "process" is meant the application or operation of some element or power of nature, or of one subject to another; as, for example, the art of tanning, dyeing, smelting ores, and the like. In such cases, the invention consists in the application of old and well-known principles to new and useful purposes.

In Equity.

The complainant by his bill charges respondent with the infringement of a patent granted to William Cooley, and duly assigned to him. The said patent bears date February 20, 1877, and is "for an improvement in obtaining cream from milk." It is described in the opinion. The defense is twofold: (1) That Cooley was not the original and first discoverer of the process described in his patent; or, in other words, prior use by other persons. (2) That, even if complainant's patent is valid, defendant has not infringed. Proofs have been taken, and the case has been twice argued. Upon the first hearing, the court found that the defense of prior use was sustained, but granted a rehearing.

*Munday, Evarts & Adcock, Wishard & Read*, and *Phillips, Goode & Phillips*, for complainant.

*Stoneman, Rickel & Eastman*, for defendant.

McCRARY, Circuit Judge. As it is admitted that the respondent has manufactured and sold a milk can constructed according to the patent issued to him on the 23d of September, 1879, known as the "Hawkeye Patent," our first inquiry will be as to whether this is an infringement of the earlier patent under which the complainant claims. An examination of the two patents will clearly show that they are substantially for the same invention. For convenience I will designate the older patent as the "Cooley Patent," and the later one as the "Cherry Patent." The Cooley patent is described as "a new process of raising cream from milk," and the specification declares that "it consists mainly in water-sealing the milk within the vessel containing it, and also in submerging such vessel in water and in apparatus hereinafter described." The Cherry patent is described as "an improved means of raising cream from milk, and for driving off the animal heat or vapor contained in the same in the shortest and best possible manner;" and the specification further declares that "the invention consists essentially in water-sealing the milk within the vessel containing it, by means of a cover of novel construction, and submerging such vessel and cover in a tank of water." In both patents, one main purpose is declared to be the excluding of the milk from the outer atmosphere during the process of raising the cream. Thus the specification in the Cooley patent declares:

"By my present invention I water-seal the can or other vessel containing the milk to be treated, whereby all possibility of the entrance into it of foreign matter, gases, or odors is prevented," etc.

And the specification in the Cherry patent declares that—

"The vessel containing the milk is submerged in a tank of water, and the milk not only excluded from the outer atmosphere, but an equality in the

temperature is established and maintained throughout the entire vessel, and the animal heat or vapor driven out into the surrounding water."

In both patents the utility of the invention is declared to consist in substantially the same thing. Thus the specification in the Cooley patent says:

"The ordinary mode of raising cream is with open cans, either shallow or deep, and then by hand labor skimming the cream from the surface after the milk has stood from say thirty-six to forty-eight hours. This mode is open to several serious objections, among which may be named the exposure of the milk to the atmosphere, from which it attracts insects and absorbs gases and odors, often very deleterious, and from which it collects and retains dust and dirt floating in the air; the agitation of its surface from winds and other causes; the great length of time required to raise the cream; the unavoidable lack of uniformity in the quality of the cream, and consequently in the butter made from it, because of the various subtile and invisible atmospheric causes which tend to taint, acidify, or otherwise vitiate it; the positive and direct exposure to all the sudden changes, electrical, thermal, and otherwise, of the atmosphere; and the necessity of having pans enough to hold the milk of two or more days' milking."

On the same subject the specification in the Cherry patent states:

"It will be observed that by the old method of raising cream in open, shallow pans, the milk absorbs deleterious odors and gases, and collects dust and dirt floating in the air, and is also subject to various changes of atmosphere, and rendering a lack of uniformity in the quality and quantity of the cream produced, and consequently lessening the value of the butter made from it. By means of the present improvement these objections are entirely obviated, inasmuch as the vessel containing the milk is submerged in a tank of water, and the milk not only excluded from the outer atmosphere, but an equality in the temperature is established and maintained throughout the entire vessel, and the animal heat or vapor driven out into the surrounding water."

The similarity in the two patents becomes still more apparent when we come to compare the description of the invention, and the milk cans actually constructed under them, some of which are in evidence before us. In both there is a cylindrical receptacle or pan for holding the milk. In both there is a tank or vessel for holding water into which the milk can is placed. In both there is a movable cover for the can, shaped somewhat like an ordinary tin pan, and placed upside down on the top of the can, the overlapping or flaring sides of the cover leaving an annular space between such sides and the can. Both are rendered airtight by water-sealing; that is, by being submerged in water, or so nearly submerged that the air is excluded from the can. In both the process contemplates that the can shall stand in the water until the cream is gathered at the top, and in both an outlet is provided at the bottom by which to draw off the milk, leaving the cream only in the can. True, there are some differences, but they are immaterial, and my conclusion is that the two patents are substantially identical.

But the counsel for the respondent insist that he has not infringed the Cooley patent; and their argument is that said patent is for a process, and not for a mechanical device, while respondent's invention is for the latter, and not for the former. It is impossible to maintain this

distinction between the two patents. What one is, in this respect, the other is. They are alike. In my judgment, both patents cover a process to be accomplished by a combination of mechanical devices. A process is patentable, provided that it is new and useful. By "process" is meant the application or operation of some element or power of nature, or of one subject to another. As examples of patentable processes, the art of tanning, dyeing, smelting ores, and the like may be mentioned. In these and in other similar cases the merit of the invention consists, not in the discovery of any new law of nature or principle of science or natural philosophy, but in the application of old and well-known principles to new and useful purposes. There can be no patent upon an abstract philosophical principle. The laws of nature and properties of matter are presumed to be known to and subject to be utilized by all alike. But the application of any one or more of these laws or principles to a practical object, and so as to secure a useful result not previously attained, is patentable. *Neilson* v. *Harford*, 1 Webst. Pat. Cas. 295; *Corning* v. *Burden*, 15 How. 267; *Cochrane* v. *Deener*, 94 U. S. 780; *Rubber Co.* v. *Goodyear*, 9 Wall. 788.

I doubt very much whether the mechanical appliances described in each of the patents is patentable aside from the process. Considered merely as cans or milk vessels, there would seem to be little, if any, novelty in them. But, however this may be, it appears, from an inspection of the Cherry patent itself, that it is intended to cover the process, and that the cans are to be used only for the purpose of raising cream in the manner described. Besides, the evidence discloses the fact beyond question that the respondent manufactures the "Hawkeye pan," and sells it to customers to be used by them in raising cream from milk according to the process described in the Cooley patent. He advertises and sells the can for this very purpose. They are especially adapted to it, and to no other, and the inference arising from their sale, that they are to be used, would be very strong. When it is added that they are generally, if not always, accompanied by directions to purchasers as to the mode of using them, which directions require the adoption and use of the Cooley process, it becomes very clear that the fact of infringement is established. *Bowker* v. *Dows*, 3 Ban. & A. 518; *Chemical Works* v. *Hecker*, 2 Ban. & A. 351; *Wallace* v. *Holmes*, 9 Blatchf. 65.

It only remains to consider the defense of prior use. The proof undoubtedly shows that, before the date of Cooley's invention, several other persons had been in the habit of occasionally submerging vessels containing milk during the process of raising cream therefrom, and in some instances, at least, such use was public. But it also clearly appears that none of these persons proceeded so far as to discover the utility of the process, or were aware of the fact that by it the important and valuable results since achieved by Cooley could be secured. It is beyond doubt that Cooley was the first to discover and to make known to the public the fact that by this process the cream could be raised in a much shorter period of time than by any other known means, and that by it a better quality of butter was to be secured at a reduced cost. The

others doubtless came very near to this discovery, but they overlooked it, as is apparent from the fact that no other one of them thought enough of the process to permanently adopt it, or to apply for a patent upon it, until after the Cooley patent had come into use and its great utility had been demonstrated. It follows that the controlling question upon this branch of the case is whether it is necessary for the defendant, in order to sustain the defense of prior use, to show, not only that the process was publicly used before Cooley's discovery, but that it was so used by some person or persons who perceived the fact of its utility, and who knew what could be accomplished by it, and who communicated this information to the public.

But, upon authority and upon principle, I am constrained to answer this question in the affirmative. In *Tilghman* v. *Proctor*, 102 U. S. 711, the supreme court, through Mr. Justice BRADLEY, held an alleged prior use not sufficiently proved, for the reason, among others, that the result had been accidentally and unwittingly produced, while the operators were in pursuit of other and different results, without exciting attention, and without its even being known what was done, or how it had been done. In *Pelton* v. *Waters*, 7 O. G. 426, the rule is distinctly recognized that the prior discoverer or inventor must have had such a conception of the invention as would enable him to give it to the public. Said Emmons, speaking of the alleged prior inventor in that case, " he not only did not give and could not give it [the invention] to the public, but he did not possess it himself." The same rule is recognized in *Andrews* v. *Carman*, 9 O. G. 1011, where it is declared, in effect, that the person " who first discovers the principle, and by putting it into practical and intelligent use first makes it available to man," is the first inventor.

If the alleged prior use of the process was under such circumstances that the public obtained no knowledge of the mode of its operation, or of the results to be attained by it, there is no prior use, within the meaning of the patent law.

"In other words, if the parties who made the combination, although seeing with the eye perceived not, and hearing with the ear understood not, * * * they added nothing to their own stock of knowledge; and the fact, if observed by other men, (if they understood it not,) added nothing to the science on that subject. Therefore the invention was not made until the parties contriving, or others observing, the existing combination, saw that it could be made available for the purpose of producing a result similar to the one which the plaintiffs have mentioned in their specification." *Ransom* v. *Mayor*, 1 Fish. Pat. Cas. 267.

These adjudications are based upon a sound principle. The rights of a patentee are granted to him upon the consideration of the giving by him to the public of a new and useful discovery. If some one before him had already given the same invention or discovery to the public, this consideration falls, and he has no basis for his claim of exclusive right. Hence it is that the alleged prior invention must have been made public. If kept secret by the first inventor until the second

has discovered it and given it to the public, the latter will be protected, for it is to him that the public is indebted; it is from him that the public has received value; and, as no one can impart that which he does not possess, it must appear that the alleged prior inventor was aware, not only of his discovery, but also of its utility. These considerations lead to the conclusion that complainant is entitled to a decree in accordance with the prayer of the bill for an injunction and accounting. Let a decree be entered accordingly.