**REM–CRU TITANIUM, Inc., Plaintiff,**
v.
**Robert C. WATSON, Commissioner of Patents, Defendant.**
Civ. A. 2520–54.

United States District Court
District of Columbia.
June 17, 1957.

Stone, Boyden & Mack, Washington, D. C., Ward, Neal, Haselton, Orme & McElhannon, New York City, of counsel, for plaintiff.

C. M. Moore, Sol., U. S. Patent Office, Washington, D. C., Arthur H. Behrens, U. S. Patent Office, Washington, D. C., of counsel, for defendant.

CURRAN, District Judge.

This is a civil action brought by the plaintiff, Rem-Cru Titanium, Inc., under Title 35, Section 145 of the United States Code, to authorize the defendant, Commissioner of Patents, to issue to the plaintiff Letters Patent containing Claims 16 to 33, inclusive, of application Serial No. 229,143, entitled "Processing of Alloys", filed by Milton B. Vordahl on May 31, 1951. Claims 32 and 33 of the application were cancelled and removed from the case before trial, leaving Claims 16 to 31, inclusive, for consideration by the Court. The aforementioned application is a division of a parent application, Serial No. 132,327, filed December 10, 1949, both applications being assigned to the plaintiff.

Of the Claims in issue Claims 28 to 31, inclusive, originated in the Vordahl application, while Claims 16 to 27, inclusive, were copied, for the purpose of interference, from patent 2,640,773, granted June 2, 1953, to Allegheny Ludlum Steel Corporation, as assignee of R. K. Pitler, on an application filed January 25, 1952.

This latter date is two years subsequent to Vordahl's effective filing date of December 10, 1949.

The Claims in the Vordahl application relate to alloys of titanium with two or more of the elements iron, chromium, manganese or molybdenum. The starting point, therefore, in Vordahl's invention is metal titanium. Pure titanium has relatively low strength compared to steel, and therefore it is necessary to alloy it with other elements which would impart increased strength. As the strength is increased by alloying additions, the ductility is correspondingly impaired until it falls below useful values. Thus it could be rendered so brittle that it could not be forged, rolled or otherwise fabricated into the final shape desired, and so the problem confronting the industry was to discover a titanium-bearing material having the optimum over-all combination of strength and ductility.

Vordahl maintains that if certain metals are alloyed in certain proportions with titanium and the resulting alloy is subjected to forging or rolling, within the alpha-beta temperature range, a new type of wrought alloy will be obtained having a unique microstructure consisting of a fine dispersion or coherent admixture of fine particles of alpha titanium and beta titanium, which possess the optimum over-all combination of strength and ductility.

The Vordahl specification indicates that the elements iron, chromium, manganese or molybdenum act as stabilizers of the beta phase of titanium alloy and that, by using a sufficient amount of these elements, a mixed alpha-beta phase structure may be obtained at normal atmospheric temperatures. The specification also presents data which indicates that the ductility of titanium-manganese alloys, having this mixed phase structure, may be enhanced by plastic deformation while maintaining the alloys at a substantially constant strength level by appropriate stabilization.

The Claims of the Vordahl application fall into two classes: (a) Claims 16 to

27, inclusive, in which titanium is alloyed with specific percentages of iron and at least two metals of the group of iron, chromium, manganese and molybdenum; and (b) Claims 28 to 31 which are directed at a titanium wrought alloy with 2 to 15 atomic percent of at least two elements of the group iron, chromium, manganese and molybdenum. Claim 16 is representative of group (a) and Claim 28 is representative of group (b).

Claim 16 is as follows:

"An improved titanium base alloy which contains about 1 to 4% iron, up to about .30% maximum of each of the gases oxygen and nitrogen, and at least two metals within the ranges specified from the group consisting of: chromium about .5 to 6%, manganese about .5 to 6%, and molybdenum about .5 to 5%; the iron-plus-alloying metal content being less than 10% but not less than about 5%; the alloy being characterized by its good ductility and impact strength with relatively high tensile strength."

Claim 28 is as follows:

"A wrought alloy consisting essentially of about 2 to 15 atomic percent in aggregate of at least two elements selected from the group consisting of manganese, chromium, molybdenum and iron, balance titanium, characterized by a microstructure comprising a coherent admixture of small bodies of alpha titanium and beta titanium, and in having an ultimate strength as hot rolled, of at least 130,000 psi and a tensile elongation of at least 2%."

Claim 30 includes an additional limitation not found in Claim 28, which requires that the minimum aggregate manganese and iron content be at least 2 atomic percent. Claim 29, in addition, requires three alloying elements with titanium, while Claims 28, 30 and 31 read on the use of three such alloying elements but require only two. Claims 28 and 31 require a numerical minimum tensile strength of 130,000 psi (pounds per square inch), while Claims 29 and 30 refer to a "high tensile strength."

The defendant denied a patent to the plaintiff because defendant's position is that (1) Claims 16 to 27, inclusive, are unpatentable because they are directed to subject matter not sufficiently supported in the application; (2) Claims 28 to 31, inclusive, are unpatentable because they are unduly broad in relation to Vordahl's actual disclosure and are based upon insufficient disclosure; (3) Claims 28, 30 and 31 are unpatentable over the United States patent to Jaffee 2,588,007; and (4) Claims 28, 29, 30 and 31 are unpatentable over the disclosure in an article by Kroll Zeitschrift fur Metallkunde, Vol. 29 (1937) p. 190 and 191.

Defendant has raised a further issue in this case by citing an additional reference, namely, the Battelle Summary Report, Part III, to the Wright Patterson Air Force Base. This reference was not cited or considered by the Patent Office during the prosecution of the Vordahl application. The transmittal letter is dated September 23, 1949. The defendant does not challenge plaintiff's statement that it has shown that Vordahl is entitled to an effective date because of prior conception, coupled with the exercise of reasonable diligence to a constructive reduction to practice prior to the Battelle Report date. The defendant concedes that this Report was not made public until several years after the filing date of the Vordahl application, but nevertheless relies upon it as showing prior knowledge by others, under 35 United States Code, § 102, as of the date, September 23, 1949, of the transmittal letter of the subject matter of Claims 28, 30 and 31 here in issue.

The issues to be decided in this case are as follows:

I. Are Claims 28, 30 and 31 patentable over Jaffee patent 2,588,007?

II. Are Claims 28 to 31, inclusive, patentable over the German publication "Metallkunde?"

III. Does the Vordahl application comply with the statutory requirements.

of 35 United States Code, § 112, as to sufficiency of disclosure to: (a) support Claims 28–31 covering Vordahl's invention; (b) support Claims 16–27 copied from the Pitler patent 2,640,773?

IV. Is the Battelle Summary Report, Part III, (a) antedated by Vordahl as to the invention of the Claims in issue; and (b) legally effective to establish prior knowledge of the alleged invention?

### The Battelle Summary Report

■ Issue IV will be disposed of first. The Summary Report, Part III, was not before the Board of Appeals of the Patent Office and was not made available to the public until several years after December 10, 1949, the filing date of Vordahl's application. The Report was prepared by the Battelle Memorial Institute and transmitted to the Wright Patterson Air Force Base on September 23, 1949. This is the date that the Patent Office relies upon as the date evidencing prior knowledge by others of Vordahl's alleged invention described in Claims 29, 30 and 31. The question, therefore, is this: Is the Report a valid reference against the aforementioned claims?

Title 35 United States Code § 102 reads, in part, as follows

"A person shall be entitled to a patent unless—(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent * * * ."

The word "known" used in the statute means "publicly known." See Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651; Gillman v. Stern, 2 Cir., 1940, 114 F.2d 28; Matheson v. Campbell, C.C., 69 F. 597, 604, reversed on other grounds, 2 Cir., 78 F. 910; Boyd v. Cherry, C.C., 50 F. 279, 283; Pyrene Mfg. Co. v. Boyce, 3 Cir., 292 F. 480, 485. In its Report accompanying the Patent Act of 1952 the House Committee on the Judiciary stated: "Subsection (a) is the language of the existing law, recognizing that the interpretation by the courts excludes various kinds of private knowledge not known to the public." (House Report No. 1923, p. 6, May 12, 1952 U. S. Code Congressional and Administrative News, 1952, p. 2399, 82d. Congress, 2d. Session.)

In re Schlittler, 110 U.S.P.Q. 304, 308, the Court stated: " * * * we are of the opinion that placing of the Nystrom article in the hands of the publishers did not constitute either prima facie or conclusive evidence of knowledge or use by others in this country of the invention disclosed by the article, within the meaning of Title 35, Sec. 102(a) of the United States Code * * * ."

■ In the Schlittler case a scientific article was published in a technical periodical subsequent to applicant's filing date, but the publication stated that the article had been received prior to that filing date. The Patent Office relied upon the same as prior knowledge as of its received date. The Court, at page 305 of the aforementioned citation stated that " * * * the basic question here is whether the Nystrom article, regardless of the date received, constitutes sufficient evidence of prior knowledge or use of the claimed invention by others in this country within the meaning of 35 U.S.C. § 102(a)." Furthermore, the Court, at page 308 of the opinion, goes on to say that " * * * the mere placing of a manuscript in the hands of a publisher does not necessarily make it available to the public within the meaning of said authorities." The fact that the Summary Report, Part III, was a report sent to an agency of the United States Government and the scientific article in Schlittler was sent to a publisher is of no legal significance. It is merely a distinction without a difference. I, therefore, hold that the Battelle Summary Report, Part III, not having been *publicly* known prior to Vordahl's filing date, is ineffective as evidence of prior knowledge.

### The Jaffee Patent

■ This case has a unique phase in that the Court has the benefit of the tes-

timony of Dr. Robert I. Jaffee, the holder of patent 2,588,007. The Jaffee patent discloses alloys of titanium with 0.5 to 2.5% chromium and 2.5 to 7.5% molybdenum as the only alloying elements. The patent also discloses that these alloys may be rolled at about 750°C. to 900°C. From Figure 1 of Jaffee it is seen that the maximum ultimate strength obtained was 129,000 psi, with accompanying elongations ranging, as depicted in Figure 2, from 12 to 21%.

Nowhere is there any reference in Jaffee to the microstructure of his alloys, nor to any of the concepts on which the Vordahl application is based, such as, the alloying with titanium of one or more of the beta promoting elements of the group chromium, molybdenum, manganese and iron, within the critical range of 2–15 atomic percent, and of subjecting the resulting alloys to working in the two phase temperature range.

Dr Jaffee testified that there is no teaching in his patent, to one skilled in the art, of working in the alpha-beta temperature ones. In response to the Court's question: "Is it your opinion Doctor, from your invention, that it is fair to assume that your alloys would possess the same microstructure as the plaintiff's?" The Doctor answered: "No, sir, they would not."

Dr. Jaffee also testified that in his opinion there was a difference between the claim in his patent and plaintiff's Claim 28; that in the Vordahl application there is mention of the working in the alpha-beta field to obtain a fine-grained equiaxed structure which was not in his; and that from his teaching in his claim it would not be apparent, to one skilled in the art, that these alloys are promoters or stabilizers of beta titanium, and that when alloyed with titanium in aggregate amounts of 2–15 atomic percent they would produce, on prolonged plastic deformation in the alpha-beta temperature range, wrought alloys having a finely dispersed mixed alpha-beta microstructure; that, in his opinion, backed up by his own personal research work since the time of his patent ap-

plication, the effect of the control of microstructure by proper fabrication on subsequent tensile ductility is a most important finding and is distinct from what he showed in his patent.

The Examiner in the Patent Office took the position " * * * Whether or not Jaffee appreciated the microstructure of his wrought alloys is immaterial. The recited characteristic does not distinguish over Jaffee because it is not actually what applicant is claiming * *" It is difficult for me to follow this reasoning because the microstructure is specifically set forth in the claims.

The Board of Appeals of the Patent Office in its decision stated:

"As regards the limitation in the claims that the alloys are 'characterized by microstructure comprising a coherent admixture of small bodies of alpha titanium and beta titanium', it is fair to assume that Jaffee's alloys will possess the same microstructure because they contain molybdenum and chromium in amounts which stabilize this microstructure at normal atmospheric temperatures."

The assumption made by the Board that Jaffee's wrought alloys possessed the claimed microstructure here is unwarranted. The fact that Dr. Jaffee testified that his alloys have both an alpha phase and a beta phase present does not mean or imply that his alloys possessed the claimed microstructure. Jaffee's alloys have a coarse grained alpha-beta microstructure because they were rolled in the all-beta range while Vordahl's alloys have a fine-grained alpha-beta microstructure because they were rolled in the mixed alpha-beta temperature range.

It is the *fine-grained* alpha-beta microstructure produced by rolling in the alpha-beta temperature range which gives the increase in ductility of 25–100%, as compared to that obtained by rolling in the all-beta temperature range.

It follows that the Jaffee patent 2,588,-007 fails as an anticipated disclosure. I

hold that Claims 28, 30 and 31 are patentable over Jaffee patent 2,588,007.

### The Kroll "Metallkunde" Publication

 The Kroll article was published in 1937 at a time when little was known of titanium and its properties. This article was concerned with the determination of the causes of brittleness when cold of the impure form of titanium then available. It concluded that this was due to contamination by oxygen which had little effect on the hot rollability of the material, but produced marked brittleness when at room temperature.

A reading of the article reveals that it is devoid of any reference to alpha or beta or alpha-beta microstructures, or to transformation temperatures of titanium, or to all-alpha, or all-beta or mixed alpha-beta temperature zones. There is no suggestion of the alleged invention of Vordahl and the Claims involved here. The Examiner apparently bottomed his rejection on certain assumptions and inferences. He compared the properties of Vordahl's binary and ternary wrought alloys as produced by rolling in the two phase field, and then proceeded to attribute to Kroll the properties of Vordahl's binery wrought alloys. This, I believe, is error, for Dr. Finlay testified that the high hardness values of Kroll's alloys made them lacking in ductility and to be glass brittle due to contamination with certain elements, and that Kroll's alloys did not have the microstructure of Vordahl's alloys because Kroll's were not rolled in the alpha-beta temperature range.

The finally dispersed alpha-beta microstructure recited in the Claims here can only be produced by working in the alpha-beta temperature field, which is not true of Kroll. Rolling alloys at 800°C. for a titanium alloy containing 4.77% iron would be, according to Dr. Finlay, in the one-phase beta temperature range, and Dr. Jaffee testified that this would produce a coarse grained alpha-beta structure at room temperature and not the fine grained structure required by the Claims here.

Kroll is a foreign publication and in Seymour v. Osborne, 78 U.S. 516–555, 11 Wall. 516, 20 L.Ed. 33 the Supreme Court stated:

"Patented inventions cannot be superseded by the mere introduction of a foreign publication of the kind, though of prior date, unless the description and drawings contain and exhibit a substantial representation of the patented improvement, in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains, to make, construct and practice the invention to the same practical extent as they would be enabled to do if the information was derived from a prior patent. Mere vague and general representations will not support such a defense, as the knowledge supposed to be derived from the publication must be sufficient to enable those skilled in the art or science to understand the nature and operation of the invention, and to carry it into practical use. Whatever may be the particular circumstances under which the publication takes place, the account published, to be of any effect to support such a defense, must be an account of a complete and operative invention capable of being put into practical operation."

It follows, therefore, that the Kroll publication fails as a valid anticipation of plaintiff's Claims 28 to 31. I hold that Claims 28 to 31 are patentable over the German "Metallkunde" publication.

### Vordahl's Application Disclosures

 Title 35, Section 112 of the United States Code provides:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set

288

forth the best mode contemplated by the inventor of carrying out his invention.

"The specification shall conclude with one or more claims particularly pointing out·and distinctly claiming the subject matter which the applicant regards as his invention."

The requirement of the statute is very clear; that is, the invention must be described, and the manner of making and using it, and the inventor's best mode of carrying it out, with sufficient clearness so as to enable any person skilled in the art to make and use it. There is nothing in the statute which requires an inventor to fill his specification with examples. Here the statute has been complied with by a clear and concise statement as to the range of analyses of the composition and the process of producing it. I hold that Claims 28 to 31 are not unduly broad and are not based upon an insufficient disclosure, and that the Vordahl application complies with the statutory requirements ·as to sufficiency of disclosure to support Claims 28 to 31 covering Vordahl's invention.

At the trial there was testimony to the effect that the directions contained in Vordahl's application were sufficient to enable one skilled in the art to make alloys containing the· Pitler elements within the alloying ranges thereof and treat them as set forth in Vordahl's application to obtain ˋVordahl's results; that the directions in the Vordahl application were adequate to take the Pitler compositions and the Pitler ranges and give them the Vordahl treatment to get Vordahl's result; that a man skilled in the art reading the Vordahl application would not need to have a statement in the Vordahl application of the particular alloying ranges for the elements given in order to make Pitler's compositions because they are encompassed in the 2–15 atomic percent range; that there would be no distinction in operating in the Pitler ranges or outside of them and yet be within the broad ranges of Vordahl insofar as the results were obtained; and that the same type of results would be obtained within as well as without Pitler's ranges.

The fact that the Pitler claims call for oxygen and nitrogen ranges up to 0.3% maximum is of no legal significance for, as Dr. Finlay pointed out, the Vordahl application has to do with commercial titanium and commercial titanium has contaminant ranges.

Vordahl's application, on page 2, states:

"The presence of such contaminants or alloying agents as carbon, oxygen and nitrogen, in the proportions in which they are commonly found in commercial titanium, tends to raise the beta transformation temperature, and establishes a relatively narrow zone or field of mixed alpha-beta structure."

Furthermore, Pitler's claims recite upper limits for oxygen and nitrogen while the lower limits are zero.

I hold that the Vordahl application complies with the statutory requirements as to the sufficiency of disclosures to support Claims 16–27 copied from the Pitler patent.

The findings of fact and conclusions of law having been included in this opinion, no formal findings and conclusions are necessary. Counsel for the plaintiff will prepare the appropriate judgment not inconsistent with this opinion.