276 F.2d 271
 CRANE PACKING COMPANY, a corporation, Beth Bernice Green, individually and as Executrix of Earl J. Bullard, Deceased, and Ronald Eugene Green and Janis Leanore Green, Minors, by Beth Bernice Green, their Next Friend, Plaintiffs-Appellants,
v.
SPITFIRE TOOL & MACHINE CO., Inc., a corporation, Defendant-Appellee.
 No. 12809.
 United States Court of Appeals Seventh Circuit.
 April 1, 1960.
 Certiorari Denied June 13, 1960.
 
 See 80 S.Ct. 1259.
 Warren C. Horton, John R. Nicholson, Chicago, Ill., Horton, Davis & McCaleb, Charles F. Voytech, Chicago, Ill., Nicholson, Nisen & Elliott, Charles M. Nisen, Chicago, Ill., for appellants.
 Clarence E. Threedy, Chicago, Ill., Edward C. Threedy, Chicago, Ill., for appellee.
 Before KNOCH and CASTLE, Circuit Judges, and PLATT, District Judge.
 CASTLE, Circuit Judge.
 
 
 1
 Crane Packing Company, a corporation, licensee under Patent Re. 23,937, and Beth Bernice Green (individually, as executrix of the estate of Earl J. Bullard, deceased, and as next friend of Ronald Eugene Green and Janis Leanore Green, minors), plaintiffs-appellants, brought suit against Spitfire Tool & Machine Co., Inc., defendant-appellee, for infringement of claims 1 to 4, inclusive, and 9 to 14, inclusive, of the patent.
 
 
 2
 Patent Re. 23,937 is a reissue of Patent No. 2,565,590 issued August 28, 1951 to Earl J. Bullard on a grinding and lapping device. It was issued February 8, 1955 on an application filed June 25, 1953.
 
 
 3
 Defendant's answer included assertions of invalidity of the patent and denial of infringement. The District Court did not reach the issue of infringement but found each of the patent claims in issue invalid and entered judgment for defendant. Plaintiffs appealed contending the court erred in its interpretation of the statutes relating to reissue patents, its interpretation of prior art, its interpretation of the law of aggregation, and in its failure to apply the correct criteria of invention.
 
 
 4
 A lapping machine is a particular type of fine grinding machine designed and intended to impart to a work piece a finely finished surface. It comprises one or more lapping surfaces, each of which is known as a lap plate, generally made of cast-iron, upon which an abrasive compound is applied. The work piece or article to be lapped is then moved over the surface of the lap plate until the desired surface is obtained on the work piece, or as nearly to the desired surface as the capabilities of the machine permit.
 
 
 5
 The lapping of an article causes wear and abrasion not only on the surface of the article but also on the surface of the lap plate resulting in its becoming grooved or roughened, and losing its "true" or desired surface. When this occurs the lap surface must be "dressed" or restored to its desired or "true" condition.
 
 
 6
 The patent in suit discloses maintenance of a true flat surface on the lap plate, or changing it from a convex to a flat, or to a concave surface, and vice-versa. A wear ring (or a plurality thereof) is placed on the surface of an annular lap plate having an inner edge around a central cavity, and an outer edge. The wear ring is adapted to hold work pieces which may be placed within the ring in a work holder. A felt pad and a pressure plate are placed over the articles to be lapped. The ring is maintained upon the lap surface by a pivot means or bearings, adjustable so that the ring may be shifted radially on the surface of the lap plate. As the lap plate is rotated, the frictional relationship between it and the ring causes the latter to rotate but not to travel with the lap since the ring is restrained from such travel by the adjustable pivot or bearings. The ring, therefore, rotates on the lap surface and by friction rotates the work holder and work within the ring. In its rotation on the lap and simultaneous rotation of the lap itself, the ring wears away the surface of the lap and maintains the desired true surface, serving to true the lap and hold the work at the same time. By moving the ring radially so that it overhangs the outer edge or the inner edge of the lap the pressure on portions of the lap surface will be made to vary. As a result a flat, a convex, or a concave surface may be produced or maintained on the lap plate, as desired. And grooves or roughness formed on the plate by pressure of articles against the abrasive material are removed as they form.
 
 
 7
 Claims 1 to 4, inclusive, and 9 and 10 of Patent Re. 23,937 are all claims of Bullard's 2,565,590 and remain unchanged in the reissue patent. Substantially, they cover an apparatus for forming a true surface of predetermined contour upon an article by grinding or lapping. Claims 11 to 14, inclusive, are added by the reissue. Claims 11 and 12 cover the method of preserving the flatness of a plane surface, or of changing the contour of the surface, of an annular lap to cause it to conform to a standard surface whether such surface be flat, convex or concave. Claims 13 and 14 cover an apparatus for forming a plane surface on an article.
 
 
 8
 The District Court in its findings of fact and conclusions of law found and concluded, inter alia, that claims 1 to 4, inclusive, and 9 and 10 are invalid for lack of invention in view of prior art, and that claims 11 to 14, inclusive, are invalid because the device of these reissue claims was on sale and in use more than one year prior to June 25, 1953, the date of the application for the reissue patent.
 
 
 9
 The feature of claims 1 to 4, inclusive, and 9 and 10, relied upon by plaintiffs to distinguish them from prior art and to constitute invention is a ring, resting loosely on and rotated by friction with the lap surface, which in addition to serving as a means to hold articles to be lapped may be utilized to loosely encircle, and rotate by friction, a separate work holder causing the articles to be rotated within the ring. The ring being free to rotate on the lap with a total pressure at least equal to that exerted by the articles lapped and thus by wearing the lap maintains a true lap surface during the lapping operation. The ring may be shifted radially on the lap to grind the lap to either a concave or convex form.
 
 
 10
 The automatic and continuous maintenance of a true surface serves to eliminate shutdown of the machine for a dressing operation with consequent loss of production, an obvious advantage in mass production industries.
 
 
 11
 The defendant relies on prior art from which the learned trial judge, on the basis of documentary evidence, exhibits, and the testimony of witnesses, found that it was clear that one having ordinary skill in the art would find the claimed invention obvious. This prior art included Desenberg patent 2,352,146 (1944); Hoke patent 1,536,714 (1925); Morton patent 1,691,120 (1928) and Missler (German) patent 345,443 (1921). All are grinding or lapping devices.
 
 
 12
 Desenberg discloses a rotatable lap, a work holder for holding the article to be lapped, a ring having a pivoted support and rotating in uniform facial contact with the lap, and by wear operating as a truing tool to automatically maintain the desired lap surface while the article is being lapped. Although the ring of Desenberg does not encircle the work or work holder, Hoke disclosed a work holder comparable to that of the claims under consideration and plaintiffs' commercial device. Hoke, utilizing opposed annular rotatable laps, discloses a work holder which is caused to rotate within a circular opening in a carrier disk by the rotation and oscillation of the circular carrier between the opposed laps.
 
 
 13
 Morton discloses a rotatable lap upon which a ring rests loosely and is rotated by friction with the lap surface. In this instance, although the ring is the article being lapped or ground, it is a fundamental principle of the mechanics of the art of lapping, illustrated in plaintiffs' Exhibit No. 14, that the article being lapped wears the surface of the lap. Thus the ring shown and described in Morton illustrated to anyone familiar with the basic mechanics of lapping a ring, resting loosely on and rotated by friction with the lap surface, capable of exerting a wearing action on the lap which may be utilized to automatically and continuously true the lap and maintain the desired surface, i. e., exert corrective action to offset wear, grooving or roughness caused by an article being lapped. The work holder of Hoke when placed in the ring of Morton anticipates the wear ring-work holder combination of the claims in question.
 
 
 14
 Missler discloses a rotatable lap utilizing a holding or restraining means disposed offset so that the articles being lapped interchangeably pass over the inner and outer rim of the lap in order to insure continuously the evenness of the lap.
 
 
 15
 It appears from the evidence that customers using plaintiffs' commercial device often omit using the work holder. Some articles may be lapped by being placed within the wear ring without a work holder (and the felt pad and pressure plate used therewith) or by being held on the lap outside of the wear ring, with the same function and result.
 
 
 16
 The findings and conclusions of the District Court in connection with reissue claims 1 to 4, inclusive, and 9 and 10 are supported by substantial evidence. The feature relied upon by plaintiffs to constitute invention is found in the combination of the truing ring of Desenberg, the loosely resting ring of Morton, the work holder of Hoke and the radial adjustment of Missler. The combination found in the above numbered claims is of elements found and demonstrated in prior art. Their adaption by Bullard resulted in an improvement but represented no more ingenuity than the work of a mechanic skilled in the art. There are no "unusual or surprising consequences from the unification of the elements here concerned" nor did Bullard's use of the features claimed "add to the sum of useful knowledge." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 130, 95 L.Ed. 162. The feature claimed lacks the impalpable something which distinguishes invention from simple mechanical skill.
 
 
 17
 It is enough to defeat a patent under 35 U.S.C.A. § 103 that from one or more related prior art patents, one having ordinary skill in the art would find the claimed invention obvious. Enterprise Ry. Equipment Co. v. Keystone Ry. Equipment Co., 7 Cir., 267 F.2d 102; Senco Products, Inc. v. Fastener Corporation, 7 Cir., 269 F.2d 33.
 
 
 18
 And the presumption of validity arising from the grant of a patent does not exist as against prior art not before the Patent Office. Hobbs v. Wisconsin Power & Light Company, 7 Cir., 250 F. 2d 100, 105. Of the prior art relied upon by defendant only Desenberg was before the Patent Office.
 
 
 19
 The District Court applied the correct criteria of invention. It did not err in holding reissue claims 1 to 4, inclusive, and 9 and 10 invalid for lack of invention.
 
 
 20
 Claims 11 to 14, inclusive, were held invalid under 35 U.S.C.A. § 102(b) because the device was on sale and in use more than one year prior to the filing of the reissue application. The common thread running through claims 11 to 14, inclusive, and contended by plaintiffs to constitute their novel feature, is the "overhanging" rotating wear ring which controls lap contour by overhanging one edge of the annular lap by an amount which takes into consideration the type of article being lapped, and the desired contour. The overhanging ring also smooths out irregularities in the lap and functions as a work holder or to rotate a separate work holder.
 
 
 21
 Plaintiffs concede that Bullard's commercial device incorporating the overhanging ring feature and embodying the other elements of claims 11 to 14, inclusive, was on sale and in public use in this country more than one year prior to the application for the reissue patent.
 
 
 22
 35 U.S.C.A. § 251 provides for the reissuance of a patent for the invention disclosed in the original patent "Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent * * *" provided that "No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent" and subject to the condition that "The provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent, * * *". And 35 U.S.C.A. § 102(b) requires denial of an application for a patent if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States".
 
 
 23
 The language incorporating provisions of the title relating to applications in the section authorizing and governing reissue patents is an entirely new provision added by the Patent Act of 1952. It was not contained in the previous statute. (R.S. § 4916, 35 U.S.C.A.Appendix, § 64). Its scope is not limited to formal or procedural, as distinguished from substantive, matters. We agree with the District Court's conclusion that although a reissue application enlarging claims may be filed within two years from the grant of the original patent it is, nevertheless, subject to the conditions proscribed by § 102(b) which are by reference incorporated in § 251. The District Court did not err in holding § 102(b) applicable and that claims 11 to 14, inclusive, were invalid because of public use and sale of Bullard's commercial device more than one year prior to the application for the reissue patent. And such holding is harmonious with the provision of 35 U.S. C.A. § 252 that a reissue patent "to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent". Claims 11 to 14, inclusive, are not identical with any claim of the original patent.
 
 
 24
 The invalidity of all of the patent claims in issue makes irrelevant any consideration of contentions relating to commercial success. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.
 
 
 25
 The judgment of the District Court is affirmed.
 
 
 26
 Affirmed.