**MINNEAPOLIS–HONEYWELL REGU-LATOR COMPANY, Plaintiff,**

v.

**MIDWESTERN INSTRUMENTS, INC., Defendant.**

**No. 57 C 1267.**

United States District Court
N. D. Illinois, E. D.

June 30, 1960.

On Motion for Amendment of Findings
Oct. 21, 1960.

Will Freeman, Bair, Freeman & Molinare, Chicago, Ill., for plaintiff.

Ooms, Welsh & Bradway, Chicago, Ill., Gordon D. Schmidt, Hovey, Schmidt, Johnson & Hovey, Kansas City, Mo., for defendants.

ROBSON, District Judge.

This suit involves the validity and infringement of Claims 3 and 13 through 17, inclusive, of the C. A. Heiland Patent No. 2,580,427 for a "Recording System," issued January 1, 1952, on an application filed August 11, 1944.

The essence of the invention is an oscillograph which produces an immediately visible trace or chart of the electrical phenomena being observed. It is used in many scientific, military and medical fields. The unique aspect of the invention is the realization that utilization of radiation, principally in the invisible portion of the spectrum, when matched with a paper coated with an emulsion primarily responsive to such radiations, permits recording of multiple high, as well as low, frequency phenomena; this recording becomes immediately visible in ordinary room light, without the delay of wet-process development.

Plaintiff's instrument is known as a "Visicorder" and defendant's as a "Direct/Riter." Defendant's Models 602 and 616 are charged with infringing claims 16 and 17 of the patent, and its Model 616, when fitted with a filter, is charged also with infringing Claims 3, 13, 14 and 15.

It is clear that the inventor combined elements existing in the prior art in an oscillograph, a lamp emitting principally ultraviolet rays or invisible rays, a paper primarily responsive to such rays and having the property of being immediately readable, when subjected to such rays.

There is no question that the prior art divulged oscillographs having direct read-out properties when using a mechanical pen or stylus. There were also the so-called "wet-process" oscillographs which permitted simultaneous charting of multiple high-speed phenomena. The prior art also revealed paper primarily responsive to ultraviolet rays.

The mechanical pen type oscillographs had the disadvantage of not being able to record very fast phenomena because of the inertia of the pen. Furthermore, they recorded but a limited number of phenomena simultaneously because one moving pen might obstruct the other. While the wet-process oscillograph obviated the disadvantages of inability to cope with fast-moving phenomena and

the limited number of phenomena contemporaneously recordable, it had its own insurmountable disadvantage of delaying the examination of the record until after the photographic development.

■ A very narrow legal question is presented. It is whether the inventor, Heiland, wrought "unusual or surprising consequences from the unification of the elements" and "add[ed] to the sum of useful knowledge" achieving "the impalpable something which distinguishes invention from simple mechanical skill." Crane Packing Company v. Spitfire Tool & Machine Co., Inc., 7 Cir., 1960, 276 F.2d 271, 273.[1]

■ If fortification were needed to buttress the conclusions of patentable novelty and usefulness and nonrevelation of the combination in the prior art, it might be found in defendant's not producing and marketing the highly desired and needed machine until after it had viewed the plaintiff's machine.[2]

■ The legal principles are not difficult[3] nor disputed. It is in their application that the parties differ.

---

1. "[N]one of the prior art references discloses *in combination* the structure of the patent in suit; * * *" Zysset and New-Nel Kitchen Products Company v. Popeil Brothers, Inc., 7 Cir., 1960, 276 F.2d 354, 357. (Emphasis ours.)

"The question of what *constitutes* patentable invention can be broken down 'into its component parts: what the prior art was and what the patentee did to improve upon it, and then, whether what the patentee did is properly to be classified as an invention.' * * *

"* * * This is to be determined upon the basis of testimony and documentary or physical exhibits. The testimony relates to the use made of prior art, and. the documentary and physical exhibits do not stand mute but speak for themselves. * * *

"The next element is concerned with the nature of the improvement the patentee has made over the prior art. Has he taught anything that is different? If there is no improvement, the patent is anticipated under Section 102 of the Patent Act. If there is an improvement, we look to Section 103 to see whether there is a difference or to ascertain the nature of the improvement over the prior art. * * *

"The final step involves the resolution of the meaning of Section 103 of the Patent Act to determine, from the language of the statute, whether 'the differences between the subject sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" Armour & Co. v. Wilson & Co., Inc., 7 Cir., 1960, 274 F.2d 143, 156.

See also Hazeltine Research, Inc. v. Dage Electric Company, Inc., 7 Cir., 1959, 271 F.2d 218; Lewyt Corporation v. Health-Mor, Inc. et al., 7 Cir., 1950, 181 F.2d 855; Blaw-Knox Company v. I. D. Lain Company, Inc., 7 Cir., 1956, 230 F. 2d 373; Mojonnier Dawson Co. v. United States Dairies Sales Corp., 7 Cir., 1958, 251 F.2d 345.

2. Charles Peckat Mfg. Co. et al. v. Jacobs, 7 Cir., 1949, 178 F.2d 794; Ric-Wil Co. v. E. B. Kaiser Co., 7 Cir., 1950, 179 F.2d 401.

3. The statute (35 U.S.C. § 282) provides for the presumption of validity from the grant of a patent (Mumm v. Jacob E. Decker & Sons, 1937, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983) and places the burden of proving invalidity upon the defendant, which can be overcome by clear and convincing evidence (Century Industries, Inc. v. Wieboldt Stores, Inc. et al., 7 Cir., 1959, 263 F.2d 934) and patentee must point out his invention with particularity (35 U.S.C. § 112) (Milcor Steel Co. v. George A. Fuller Co. et al., 1942, 316 U.S. 143, 62 S.Ct. 969, 86 L.Ed. 1332) in his claims (Universal Oil Products Co. v. Globe Oil & Refining Co., 7 Cir., 1943, 137 F.2d 3). The invention must cover something new (35 U.S.C. § 101) which is not in prior (35 U.S.C. § 102) public (Rem-Cru Titanium, Inc. v. Watson, Commissioner of Patents, D.C.1957, 152 F.Supp. 282; Block v. Nathan Anklet Support Co., Inc., 2 Cir., 1925, 9 F.2d 311; Gayler et al. v. Wilder, 1850, 51 U.S. 477, 10 How. 477, 13 L.Ed. 504) knowledge. Prior art need not have been commercially exploited (Hobbs v. Wisconsin Power & Light Co., 7 Cir., 1957, 250 F.2d 100) nor is commercial success of a patented process capable of rendering a combination, not novel, patentable (Goldman v. Bobins, 7 Cir., 1957, 245 F.2d 840).

Defendant is free to follow the prior art and is not an infringer if its instrument fails to use all elements in each claim charged to be infringed (Flowers v. Austin-Western Company, 7 Cir., 1945, 149 F.2d 955; Edwards v. Hychex Prod-

A great deal of reliance is placed by defendant on the collective revelations of the prior art to defeat the inventive stature of this patent. The Court, however, is convinced that no worker in the oscillator field with mere mechanical skill had been able to collate the scattered revelations into an effective and highly useful instrument as did the patentee. He perceived that paper having prescribed chemical properties responded primarily and immediately to specific rays, the ultraviolet and invisible rays, chemically changing the emulsion on the paper so as to make immediately a visible line on the paper.

Oswald Patent No. 2,030,760, dated February 11, 1936, cited by defendant's expert as the best reference against the validity of the Heiland patent, was on a "Method and Means For the Recordation of Sound" in "talking movies" upon "photo-sensitive material to light of approximately 4,000 Angstrom units" by photo-electrical means. His Claim 7 even limits the light to ultraviolet rays. He also counseled using "that particular form of light * * * best suited to the particular emulsion deemed most suitable," and that "the relative excellence of the result will depend upon the selection of the wave length particularly appropriate to the photographic emulsion selected." The Oswald patent is not a file wrapper reference.

The important differentiation in the Oswald patent is that it contemplated "developing said latent images into * * visible images." Oswald's specifications state that an object of his invention is the "treatment of that latent image and phsyical means, chosen with due regard to the means and methods which had been employed to implant the latent image and the characteristics of the particular photo-sensitive material employed, as will retain in the stable and completed sound image the quality imparted by such previous steps in the process." The need for wet-processing in Oswald is confirmed in the specifications which advise the selection of "the developer for the latent image so implanted upon the selected emulsion * * * with due regard to the particular characteristics of the particular emulsion. * * *."

Oswald's specifications proceed to delineate the development solution, the time and temperature to be employed in development, and then "the usual steps of washing, fixing, and final washing." He further advises that the film be "totally immersed during the entire period of development in order to minimize oxidation fog."

It is thus very evident that Oswald had not achieved an immediately visible trace by the use of ultraviolet rays and the prescribed emulsion. His teachings received patent recognition in February, 1936, and yet they taught no one to make the machine having the capabilities of the Visicorder or Direct/Riter, which did not appear on the market until twenty years later.

It was also shown that Oswald was principally concerned with the recordation of *sound* and made use of black and white film which has its greatest sensitivity in the visible spectrum.

The Mintrop Patent No. 1,451,080, issued April 10, 1923, is cited by defend-

---

ucts et al., 7 Cir., 1948, 171 F.2d 259). Claims may not cover more than the patentee's invention and cannot be given a construction broader than the actual teachings of the patent as shown by the specifications and drawings (Vischer Products Co. v. National Pressure Cooker Co., 7 Cir., 1949, 178 F.2d 125). What the patentee by a strict construction of the claim has disclaimed cannot be regained by recourse to the doctrine of equivalents. Exhibit Supply Co. v. Ace Patents Corporation, 1942, 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736. Im-

provement of one element of an old combination which remains otherwise unchanged is not patentable (Bassick Manufacturing Co. v. R. M. Hollingshead Co., 1936, 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251; Hobbs v. Wisconsin Power & Light Co., 7 Cir., 1957, 250 F.2d 100), and mere aggregation of old elements performing no new or different function does not constitute patentable invention (Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008.

ant as prior art in respect to the filter element of the Heiland patent, which element is found only in plaintiff's Claims 3, 13, 14 and 15, and therefore raisable only as to them. The Mintrop patent concerns a "Field Seismograph" and teaches a "yellow or red window" which "allows inspecting the curve and the time marks from the outside." It utilized, however, an incandescent lamp, did not disclose matching of rays and paper, and required wet developing. It is therefore not anticipatory of even Claims 3, 13, 14 and 15.

The deBoer Patent No. 2,057,016, issued October 13, 1936, covers a "Light-Sensitive Material and Process" and is cited by defendant as a disclosure of Heiland's teachings. However, a careful reading of that patent shows that although an image is formed by subjection of paper chemically responsive to particular rays, the radiation must be for a "sufficient length of time" to produce a readily perceptible contrast effect. If "it is subjected for a shorter length of time a latent picture is produced which can readily be developed." The "embodiments" of the deBoer patent and its claims cite the development of the image to achieve the desired "visible contrast effect," although claiming a visible trace and immunity of the paper from daylight rays. The testimony disclosed that one embodiment of the deBoer patent which did not require development required a vacuum, which rendered it impractical. Paper made in accordance with the deBoer patent, and tested in the machines here involved, was ineffective.

Sheppard Patent No. 1,934,451, issued November 7, 1933, for an ultraviolet "sensitive layer" on paper to demonstrate or dose ultraviolet radiation of sunlight or artificial light, revealed only that paper of certain chemical composition reacted to give a visible image when subjected to ultraviolet rays. Paper made in accordance with this patent was tested in plaintiff's oscillator and proved, according to the testimony, to have such a slow speed of response as to be in-

effective in plaintiff's oscillator. Similar samples proved ineffectual in defendant's Model 602.

The Lockhart Patent No. 2,099,938, issued November 23, 1937, for an Electro-stethograph, for recording heart beats, specifically provides for wet-processing. It says: "The handle must then be swung for cutting off the film and closing the cylinder so that the cylinder can be removed from the compartment and taken to the dark room for development." There is no intimation in Lockhart of matching of rays to sensitive responsiveness of paper.

It is not necessary to discuss the remaining patents cited by defendant, some of which were rejected as not anticipatory by the Patent Office. They were relegated by defendant's expert to less important positions than those patents already detailed.

No single prior art patent covered the Heiland novel combination. In fact, most of those dealing with the respective elements revealed less helpfully the constituent parts.

Much reliance is also placed by the defendant upon the work carried on for the United States Government by the Department of Terrestrial Magnetism (abbreviated DTM) of the Carnegie Institution, in connection with work on a Magnetograph, in 1943. This work was classified as restricted for security purposes and was stipulated by counsel not to have been declassified until December 15, 1953, which date is subsequent to Heiland's date of conception and reduction to practice. It is, therefore, not to be deemed part of the prior art. Furthermore, this reference, which was not cited in the Patent Office, involved a machine using a low voltage incandescent lamp (which is not strong in ultraviolet range) and paper speed of only nine inches a day. Although Eastman 1090 paper was used there could be no matching of maximum ultraviolet radiation and paper sensitivity in the absence of the former element.

It was also proved that two of the three DTM Magnetographs were used

outside the United States prior to the filing of the patent and the use of the third one in the United States did not occur until after that date.

Defendant challenges the specificity of the patent's instructions as to the manner of making the recording medium. The evidence disclosed, however, that the teachings of the patent are understandable and can be followed by persons conversant with the fields involved.[4] Actual samples of paper made by persons [5] skilled in the art were tested and the graphs of the performance of the samples conformed substantially to the charts of the patent, as did the graphs of the paper, Eastman Linagraph, used in the defendant's machines.

Much stress is laid by defendant on the phraseology of the patent in the use of language:

> " * * * [A] film which is sensitive only to said *invisible* radiations. * * * " (Claim 3.) (Emphasis ours.)

While it must be conceded that each claim must stand on its own, the patentee's phraseology in Claim 14 is a clarification of the description of the sensitivity of the paper, and the thought meant to be conveyed, when he states:

> " * * * [A] recording medium carrying a photo-sensitive emulsion which is sentitive *substantially only* to the wave length of said radiations. * * * " (Emphasis ours.)

Claim 13 calls it a "photo-sensitive emulsion which is sensitive *substantially only* to the wave length of said radiations * * * ." (Emphasis ours.) Claims 15, 16 and 17 describe the recording medium as "including a substance of *maximum response* to such wave length." (Emphasis ours.) This is just another instance of a patentee's being his own "lexicographer" [6] and an asserted infringer seeking refuge in a strained and strict construction of patentee's claim terminology.

Defendant asserts that since patentee nowhere defines the word "invisible," the standard definitions found in reference books should prevail and quotes at length therefrom. The Court, however, is enlightened by the patentee's pictorial definition in Curve 280 of Figure 18. It clearly discloses some radiation beyond .4 microns, which is designated as the dividing line between ultraviolet and violet, the amount of radiation diminishing markedly in the violet and terminating before the green portion of the spectrum is reached. It is clear, therefore, that the patentee appreciated that the ultraviolet source radiations were not exclusively, and without qualification, in the ultraviolet range. The testimony of the scientists also disclosed that visibility and invisibility of light rays is a comparative matter, depending upon the individual's capabilities or peculiarities.

Curve 282 of Figure 18 of the Heiland patent shows the responsiveness of the paper, the emulsion of which is made in accordance with the teachings of the patent. It discloses that said responsiveness, similarly to the radiations, is principally in the ultraviolet sector of the spectrum.

There is no factual basis in the evidence to sustain the contention that Heiland's patent was lodged only in unproved theory. He had constructed and operated an embodiment, which produced the results detailed in the patent, before August, 1942. The marketing of plaintiff's machine was delayed because of nonavailability of the paper to be used in it. Heiland's company could not manufacture it commercially and Eastman, not believing it had sufficient commercial demand, did not manufacture its Linagraph paper until much later. These facts are substantiated by the testimony of several witnesses (Hollister, Gillon

---

4. Even defendant's expert witness, Dr. Plint, seemed to understand the Heiland patent.

5. Dr. Troy A. Scott and Roger Erickson.

6. Universal Oil Products Co. v. Globe Oil & Refining Co., 7 Cir., 1943, 137 F.2d 3.

and Moyer) and by contemporaneous documents.

As to the issue of infringement, the evidence clearly demonstrates that defendant's Models 602 and 616 incorporate all the elements of the respective claims they are charged to infringe, having the source of rays, principally invisible, and the recording medium, primarily sensitive and responsive to such radiations, effecting a trace immediately visible in ordinary light, without the necessity of wet-processing. Its oscillators employ the self-same elements as are enumerated in the claims. Those oscillators of Model 616, without filter, infringe Claims 16 and 17 of the Heiland patent, which omit the necessity of a filter. The Court is not persuaded that defendant's patent expert correctly construed the Heiland patent, its teachings or capabilities. His demonstration of defendant's Model 602, in the court, was not convincing evidence of the inability of that machine to produce an immediately visible trace.

Plaintiff's expert (Erickson) testified as to tests made of defendant's Model 602 at both high and low speed and found the radiation curve similar to the graph of the patent, and the trace immediately visible. The peak of the curve of radiation and sensitivity in tests of defendant's Model 602 occurred at approximately the same wave length in the ultraviolet area, as in the samples made pursuant to the patent.

Defendant also bases its denial of infringement upon the assertion that its machines do not effect an *"immediately"* visible trace, as substantiated by its courtroom demonstration, and stresses the patentee's limitation to his chosen word. The defendant's expert had, however, known of immediate traces being made, and plaintiff's courtroom demonstration of another model of defendant's, conclusively proved immediately visible traces were achieved in defendant's machine. Evidence was also presented that another Model 602 of defendant's, installed in a van in the East, operated by the United States Bureau of Mines, achieved immediate traces when tested.

Furthermore, the word "immediately" was evidently deemed by defendant to be a sufficiently accurate description of its own machine's operation to justify its use of that word in its literature concerning the machine's operation.

■ The Court concludes that on both the issues of validity and infringement, the plaintiff has fully sustained its burden of proof and therefore determines that the Heiland patent is valid and that defendant's Models 602 and 616 infringe Claims 16 and 17 of said patent, and Model 616, which incorporates an amber filter, infringes Claims 3, 13, 14 and 15 of said patent.

The Court adopts the proposed findings of fact and conclusions of law submitted by plaintiff and rejects those tendered by defendant.

### On Motion for Amendment of Findings

Defendant, by this motion, reasserts for adoption by this Court its heretofore proposed findings 11 through 20, inclusive, 25 and 31, which in general pertain to the work of the United States Government by the Department of Terrestrial Magnetism discussed at pages eight and nine of this Court's decision of June 30, 1960, and in the Court's findings numbered 57–59 and 64–66, and determined by the Court not to be prior art.

■ It is not the function of a motion for amendment of findings under Fed.Rules Civ.Proc. Rule 52(b), 28 U.S. C.A., to serve as a vehicle for a rehearing Heikkila v. Barber, D.C.S.D.Cal.1958, 164 F.Supp. 587.

■ Defendant has urged that the "new findings are important in terms of the simple question—Does Eastman Kodak Company, or a purchaser from Eastman Kodak Company, have an unrestricted right to use the Eastman direct readout papers in prior art oscillographs using ultraviolet light sources?"

The Court is of the opinion that it is not its function in this suit, where the

issues are the validity of the Heiland patent and its infringement by defendant's Models 602 and 616, to determine whether the Eastman paper might safely be used in conjunction with prior art oscillographs.

The defendant's motion is denied.