### ORR v. SKILSAW, Inc.

#### No. 7666.

Circuit Court of Appeals, Seventh Circuit.

Dec. 19, 1941.

Albert J. Fihe and Orr, Vail, Lewis & Orr, all of Chicago, Ill. (Warren H. Orr, of Chicago, Ill., of counsel), for appellant.

James L. McManus, of Chicago, Ill., for appellee.

Before EVANS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from a decree dismissing for want of equity Patentee Orr's suit to recover damages for the alleged infringement of two reissue patents on portable electric grass trimmers or cutters. No. 21,274, the first patent in suit, is dated November 21, 1939. It is a reissue of Orr's original patent No. 2,149,463 which was applied for on February 4, 1935, and dated March 7, 1939. No. 21,289, the other patent in suit, is dated December 5, 1939. It is a reissue of plaintiff's original patent No. 2,153,771 which was applied for on May 4, 1936, and dated April 11, 1939. The District Court held both reissues invalid in the light of prior art and prior uses presented by the defendant and rendered judgment for the defendant.

The claims in suit[1] disclose protecting guards for rotating electrically operated grass cutters or trimmers. Without the claimed features, such devices certainly are not new. Their principle is simple: A small electric motor rotates a blade in a horizontal plane at such a high rate of speed that the blade's impact cuts the grass rather than shearing it as does the ordinary mower. Obviously, in either grass cutting or hedge trimming, if the rapidly moving blade were not covered in some way, there would be danger of personal injury to the operator and chance of damage to the blade by contact with sticks, stones, and other unyielding substances.

In March, 1933, more than two years before the filing of applications for either patent in suit, the defendant used the principle of the swiftly rotating blade in its so-called Whiz Trimmer. To protect the operator and the blade of this model, the defendant shielded the cutting member by two plates, one above and the other below the blade, each of which was circular for approximately 240° of the periphery. Along this circumference the edges of the plates were drawn together so as to enclose completely the blade for these 240° of its cutting revolution. The remainder of the lower plate was a curved face beyond whose edge the blade extended about a half an inch. The rest of the upper guard was

---

[1] Reissue No. 21,274.

"5. In a grass cutter of the manually portable type, a rotatable blade for the cutter, means for driving the same, a disk-like support spaced from the blade and having a substantially flat ground riding face wholly unobstructed and adapted to closely follow the ground topography as it is moved thereover in any direction, and means for securing said support to the cutter."

"7. An electric grass cutter and trimmer, comprising a housing, a motor on the housing, a cutting blade rotatably positioned beneath the housing and driven by the motor, a cutter supporting plate spaced from the blade and adapted to be moved over the ground and to follow the ground topography as the cutter is operated, the blade being sharpened at its ends, which ends project beyond the periphery of the plate and combined guard means for the blade and supports for the ground plate."

Reissue No. 21,289.

"3. In a grass cutter and hedge trimmer, a motor casing, a skirt at one end thereof, an angular bracket secured to said skirt and extending transversely thereof, a pan-shaped runner of lesser diameter than

the free end of said skirt secured to said bracket, and a guard hook secured to said bracket and extending upwardly beyond the free edge of said skirt.

"4. In a grass cutter and hedge trimmer, a motor casing, a skirt at the lower end thereof, a cutter blade driven by the motor and mounted just below the skirt, a bracket secured to said skirt and extending thereunder, a disc-like runner on the bracket and a guard hook on the bracket adjacent the runner, said guard hook adapted to engage the grass growing close to a wall and move the same into contact with the cutter blade.

"5. In a grass cutter and hedge trimmer, a motor casing, a skirt at the lower end thereof, a cutter blade driven by the motor and mounted just below the skirt, a bracket secured to said skirt and extending there-under, a disc-like runner on the bracket, a guard hook on the bracket adjacent the runner, said guard hook adapted to protect the blade and also engage the grass growing close to a wall and move the same into contact with the cutter blade, and means for removably securing the runner, the bracket and the guard hook to the skirt."

curved and had parallel teeth or prongs extending approximately ⅜ of an inch beyond the blade in its free sweep of 120°.

The success of this device as a grass trimmer was limited. Owing to its structure, the machine could be moved only in the direction permitted by the somewhat restricted cutting revolution. The trimming operations were tedious because the machine would become clogged with the wet grass that entered the metal envelop surrounding most of the blade.

For the 1934 season, the defendant made a few changes in this Whiz model. The two protecting plates no longer were drawn together at their edges. Joined to each other by securing studs and bolts, the entire plates were spaced slightly apart. The defendant removed the guard teeth or hooks from the upper plate and put on the lower plate guard teeth which were pointed and turned up at their ends. This model antedated by more than a year the filing of application for either reissue in suit.

The plaintiff's first reissue discloses an electric cutter and trimmer whose power unit is a small electric motor which is supported in a housing mounted on a skirt. Immediately below the skirt and protected thereby is the motor operated blade whose ends extend beyond the periphery of a disk which lies beneath it and in a plane parallel to that of the blade and the skirt. An angular bracket connects this circular disk to the skirt. The disk is called the ground-riding plate and supports the instrument when it is moved across the ground.

■ Common to all high speed rotating blade trimmers was the problem of securing the optimum balance between protection both to the operator and blade on the one hand, and operating efficiency and utility on the other. To be sure, the plaintiff, by reducing considerably the size of the ground-riding plate and suspending it from the skirt by only a narrow bracket, was more successful in solving this problem than was the defendant in its two preceding models, but we do not believe that the plaintiff's improvements over the defendant's implements involved more than the work of a skilled mechanic. Hotchkiss v. Greenwood, 11 How. 248, 52 U.S. 248, 266, 13 L.Ed. 683; Cuno Engineering Corporation v. Automatic Devices Corp., 62 S.Ct. 37, 86 L.Ed. ——, decided by the United States Supreme Court on November 10, 1941. "Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable." Reckendorfer v. Faber, 92 U.S. 347, 356, 357, 23 L.Ed. 719. At best, Orr's efforts were merely the skill of the calling and not an inspiration of inventive genius entitling him to the grant of a patent. We may not relax the rule of the Hotchkiss and the Cuno cases, supra.

This result, patent as it is, makes unnecessary discussion of the cited patents which show that Orr's developments were plainly indicated by the prior art.

■ The other reissue of plaintiff discloses a structure substantially the same as in the earlier reissue. There is one allegedly important addition and that is a guard hook which is attached to the ground-riding plate. The hook's function is to protect the revolving blade and to pull the grass into the cutter. Admittedly, the teeth of neither of defendant's earlier trimmers pull the grass into the cutter, but clearly that function is performed by the hook on either side of the bottom plate disclosed in the Rader Patent No. 1,715,675 issued June 4, 1929, which related to a machine for use in trimming shrubbery. Although the other elements of Rader are not identical with the plaintiff's, still for invention "more must be done than to utilize the skill of the art in bringing old tools into new combinations." Cuno, supra [62 S.Ct. 40, 86 L.Ed. ——], and cases there cited. The guard hook claimed was not a patentable feature.

■ In view of Skilsaw's prior uses and the state of the prior art, the court correctly dismissed the complaint for want of equity. The decree of the District Court is affirmed.