**CENTURY INDUSTRIES, INC., Plaintiff-Appellee,**

v.

**WIEBOLDT STORES, INC., Defendant-Appellant,**

and

**Marsel Mirror & Glass Products, Inc., Intervening Defendant-Appellant.**

No. 12423.

United States Court of Appeals Seventh Circuit.

March 3, 1959.

Warren C. Horton, Malcolm McCaleb, and Horton, Davis & McCaleb, Chicago, Ill., for appellant.

James R. McKnight, Chicago, Ill., for appellee.

Before SCHNACKENBERG, HASTINGS and KNOCH, Circuit Judges.

HASTINGS, Circuit Judge.

This is an action for patent infringement by Century Industries, Inc., plaintiff-appellee, against Wieboldt Stores, Inc., defendant-appellant, and Marsel Mirror & Glass Products, Inc., intervening defendant-appellant.

The patent in suit, No. 2,677,990, was issued on May 11, 1954 to Arthur Bienenfeld and Harvey L. Hurwitz and is owned by plaintiff under assignment from the patentees. The patent is for a "Mirror Kit for Home Decoration," designed for a "do-it-yourself" installation, the kit being made and sold by plaintiff. Defendant Wieboldt is charged with having infringed through the retail sale of sectional mirrors manufactured by intervening defendant Marsel. Each defendant filed an answer denying infringement and alleging invalidity of plaintiff's patent, together with a counter-claim. Following a trial requiring a part of two days the district court found for plaintiff and rendered judgment holding the patent valid and infringed, permanently enjoining defendants from further infringement and referring the cause to a master for the determination of damages. This appeal followed, the contested issues being those of validity and infringement.

At the outset it is apparent that the findings of fact adopted by the trial court are wholly inadequate to support the conclusions of law and judgment in this case. The findings are six in number, the first three merely reciting the names and residences of the parties and the fourth that plaintiff is the owner of the patent in suit. The remaining two findings are:

"5. Plaintiff has extensively made and sold Mirror kits made in accordance with said Patent No. 2,677,990 and is prepared to supply the demand therefor.

"6. Defendant, Marsel Mirror & Glass Products, Inc., has made and sold and defendant, Wieboldt Stores, Inc., has sold mirror kits subsequent to May 11, 1954 in accordance with said Patent No. 2,677,990."

We need not elaborate upon their insufficiency to sustain a conclusion of validity and infringement.

The oral testimony was brief and limited to plaintiff's general manager, Hoyne Greenberg, and defendant Wieboldt's secretary, Otto E. Haedike. No expert testimony was taken. Plaintiff also read portions of two discovery depositions, taken in New York, of defendant Marsel's president, Marvin Leopold, and its treasurer, Selton Barlow. In addition there are a number of exhibits in evidence, including the patent in suit and its file wrapper, a sample of the patented kit and the accused mirror set, plaintiff's notice of infringement to each defendant, various advertisements of the parties and a number of prior art patents. On this state of the record, rather than remand the case at this juncture for additional findings, we have read and considered the entire record and are prepared to dispose of this appeal on its merits.

The file wrapper discloses that the original application was filed June 13, 1952 and contained three claims. On December 10, 1952 the application was examined by Acting Examiner Anderson who rejected all three claims, citing as references Dieter Patent No. 2,289,634, dated July 14, 1942, and Downham, et al., British Patent No. 609,691, dated October 5, 1948. The first ground of rejection was that the claims failed to claim statutorily patentable matter. The second ground of rejection was that the claims were indefinite and aggregative, and that each was a mere catalogue of parts "without any coaction between the components being positively provided for." The final ground of rejection was that the claims were in any event unpatentable over the Dieter and Downham patent references.

Following the rejection of the claims the applicants, on May 4, 1953, filed sev-

eral amendments to each claim in order "more definitely to set forth the cooperation between the parts." On March 3, 1954 Examiner Gonsalves rejected all three claims. Claim 1 was rejected as "vague and indefinite," and Claims 2 and 3 were rejected once more as unpatentable over the same references, Dieter and Downham.

On March 8, 1954, the applicants filed a further amendment canceling Claims 2 and 3. Claim 1 was amended by striking out the last two words in the phrase, "a supply of mastic applied *be applied.*" The patent was then allowed by a third Examiner with only Claim 1 as finally amended, which now reads as follows:

"A mirror kit for home decoration comprising twelve square body members formed of mirror glass, a supply of mastic applied to the backs of said body members for bonding them to an appropriate vertical surface, said mastic being free from ingredients deleterious to mirrors, a plurality of clip tabs comprising a piece of cloth gummed on one side, said cloth bent back upon itself on the gummed side along a transverse line, said cloth having an opening positioned at the center of said line, a metallic T-shaped clip having its upper portion positioned along said line, said cloth bent back upon and sealed to itself above said clip to hold said clip in place, said clip having a downwardly extending portion extending through said opening, said downwardly extending portion having a hook at the bottom thereof, said hook extending outwardly from said cloth at a right angle, said clip tabs attached to the vertical surface by moistening said gummed cloth and pressing it against said surface, whereby said hooks support the bottom edges of said body members and prevent said body members from slipping while said mastic is drying, and a plurality of long, narrow, cardboard spacer strips, said spacer strips temporarily inserted edgewise between the adjacent edges of said body members at the time said body members are adapted to the vertical surface, said spacer strips upon their removal provided space between said body members for heat expansion of said body members without the glass cracking, said kit adapted to be used by the home occupant himself without additional tools or specialized skill of any kind."

The Patent Office considered only the Dieter and Downham, et al., patents as references. Dieter shows structural glass fastened to a wall of building blocks by mechanical fasteners or clip members. Downham, et al., shows it to be old in the art to provide a plurality of metal clips to hold a lateral or base edge of a "splashback" mirror when mounting it on the wall. The first Examiner pointed out that, "[n]o invention is seen in further securing the mirror by means of adhesive material and providing a plurality of mirrors for ornamental purposes as taught by Downham, et al." The second Examiner made substantially the same comment and added that, "[m]ere assembly of these parts into a kit is not seen to be invention." We are unable to find any basis for differentiating between Claim 1 and Claims 2 and 3 (abandoned by applicants in their second amendment) so as to bring Claim 1 outside these patent references. Likewise, we fail to see how the elimination of the two words in Claim 1 on its second amendment could be construed as an appreciable or material change.

At the trial the court had before it Defendant's Exhibit No. 4, a series of patents showing that frames for mirrors, name holders and other articles were commonly mounted upon a wall or object by providing spaced-apart channel members into which the article could be slidably mounted. We have considered this exhibit and find that such teachings are old in the art. We fail to see invention in the use of a mastic (adhesive) to hold a mirror on a wall. The use of metal hooks or clips is certainly old and the temporary use of paper strips between

the mirror sections to prevent chipping while the mastic dries is not invention. To say that the use of a specific number of mirrors (twelve in this case) adds anything to inventiveness is without merit.

In analyzing this single claim it is clear to us that the catalogue of the various elements as a whole do not attain the stature of statutorily patentable matter. In our view this is a narrow patent claim which merely recites a combination or aggregation of old elements in which each performed the same function that it had been known to perform. "This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of the prior art and claims them in congregation as a monopoly." Great Atlantic & Pac. Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 152, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162. This is not invention. See also Pleatmaster Inc. v. J. L. Golding Mfg. Co., 7 Cir., 1957, 240 F.2d 894, 897.

We are cognizant of the presumption of validity which attaches to a patent, 35 U.S.C.A. § 282, but we have concluded that, in this case, such presumption "was overcome by clear and convincing evidence on the part of the defendants * * *." Goldman v. Bobins, 7 Cir., 1957, 245 F.2d 840, 844.

It is urged that because of the advantages inherent in the "do-it-yourself" method of installing the mirror set it has enjoyed substantial commercial success and that this lends strength to the presumption of validity. But, as the Supreme Court pointed out in Great Atlantic & Pac. Tea Co. v. Supermarket Equipment Corp., supra, at page 153 of 340 U.S., at page 130 of 71 S.Ct. "* * commercial success without invention will not make patentability." See also Toledo Pressed Steel Co. v. Standard Parts, Inc., 1939, 307 U.S. 350, 356–357, 59 S.Ct. 897, 83 L.Ed. 1334. Furthermore, the use of the "do-it-yourself" technique cannot, in and of itself, make that which is otherwise unpatentable the subject of invention.

Having determined that the patent in suit is invalid, the question arises whether we should pass upon the issue of infringement. Although in such a situation this court has in some cases seen fit to do so, we see no good purpose, here, in pursuing this matter further.

The judgment of the district court is Reversed.