**ENDEVCO CORPORATION, a corporation, Plaintiff,**

v.

**CHICAGO DYNAMIC INDUSTRIES, INC., a corporation, Defendant.**

**Civ. A. No. 63 C 2185.**

United States District Court
N. D. Illinois, E. D.

Feb. 21, 1967.

James R. Dowdall, Pendleton, Neuman, Seibold & Williams, Chicago, Ill., and Reed C. Lawlor, Los Angeles, Cal., for plaintiff Endevco.

Edward C. Threedy, Threedy & Threedy, Chicago, Ill., for defendant Chicago Dynamic.

AUSTIN, District Judge.

## FINDINGS OF FACT

### Jurisdiction of the Court

1. This action arises under the Patent Laws of the United States, 35 U.S.C., and this Court has jurisdiction pursuant to Title 28, §§ 1338(a) and 1400(b).

### The Parties

2. Endevco Corporation, a California corporation who brought this suit, assigned all of its right, title and interest in and to the Wright patent 3,089,923, together with the right of recovery for past as well as present infringement of said patent, to B–D Equipment Corp., a California corporation. Subsequently and before trial, B–D Equipment Corporation changed its name to Endevco Corporation, the present plaintiff herein.

3. Defendant, Chicago Dynamic Industries, Inc., is a corporation of the State of Illinois, with its principal place of business in the City of Chicago, and County of Cook, within the Northern District of Illinois, Eastern Division.

## The Patent in Suit

4. The patent in suit, No. 3,089,923, relates to a Sectional Digital Switch and was issued May 14, 1963 on an application filed on June 15, 1959 by Harry Dudley Wright.

## The Claims in Issue

5. The patent in suit contains eleven claims, of which only claims 1 to 6 inclusive are here in issue. Claim 1 is a parent claim, and claims 2 to 6 are dependent claims, each incorporating claim 1 and adding thereto structural and functional limitations. While the patent bears the title "Sectional Digital Switch" such as covered by claims 7 to 11 inclusive not here in issue, claims 1 to 6 in issue are directed to a "switch" per se.

6. The claims in issue read as follows:

Claim 1. A switch comprising an outer wall member [15] of contoured configuration forming a limited switch actuation region [25] disposed between and bounded by a pair of spaced, sloping and diverging outside surfaces [15a], said pair of diverging surfaces extending outwardly from said switch actuation region and being located adjacent opposite ends of said region, said switch actuation region having an open window [25] including a portion extending substantially from one to the other of said sloping surfaces, a rotor [30] mounted for rotation in either of two opposite directions on an axis located anterior of said wall member and said open window portion, switching means [60] coupled to said rotor for completing a plurality of different electrical circuits in response respectively to movement of said rotor to a plurality of predetermined different angular circuit registration positions, said rotor [30] comprising a movable operator portion having a plurality of spaced radial members [35] at least one of which always extends through said open window portion and each of which is adapted to be manually engaged only in said limited switch actuation region of said outer wall member, said radial members [35] compris-

ing lugs extending outwardly of said operator portion in sufficiently spaced relation to one another to permit insertion of a finger tip into the space at either side of each said lug between directly adjacent ones of said lugs to permit a turning force to be exerted upon said rotor in either of two opposite directions by finger pressure exerted in a direction predominantly circumferential and predominantly non-radial of said rotor, one of said radial members [35] comprising a lug disposed adjacent a central part of said window portion [25] at a given time and others of said radial members comprising further lugs inclined to lie generally along both of said pair of sloping surfaces at said given time, said sloping surfaces [15a] being respectively positioned to intercept a finger, engaging one or the opposite side respectively of said one radial member, after said finger and said one radial member have moved said rotor in one or the opposite direction to bring said rotor [30] into one of said predetermined different circuit registration positions, thereby to cause switching to be effected in a succession of limited arcuate rotor rotations determined primarily by the positioning of said sloping surfaces [15a] relative to the finger engaged one of said radial members [35].

Claim 2. The switch of claim 1 wherein said rotor [30] further includes an indicia bearing section [36] rotatable with said rotor, said window [25] including a further portion [28] disposed adjacent said indicia bearing section and positioned to permit the viewing of one indicium only on said indicia bearing section at any given time.

Claim 3. The switch of claim 2 wherein said further window portion [28] is disposed adjacent to and at one side of said first mentioned window portion [25], said further portion being shorter in length than said first portion, the adjacent sides of said window portions merging with and opening into one another whereby said window is substantially T-shaped in configuration.

Claim 4. The switch of claim 1 wherein said switching means [60, Fig. 5; 80, Fig. 8] includes a printed circuit [64, Fig. 3; 84 etc. Fig. 6] disposed at a position anterior of said wall member, and wiper means [60; Fig. 5; 80, Fig. 8] engaging said printed circuit, said wiper means and said printed circuit being relatively rotatable for effecting a switching operation upon rotation of said rotor.

Claim 5. The switch of claim 4 wherein said printed circuit [64, Fig. 3; 84 etc. Fig. 6] is carried by a supporting member [20, Fig. 3] fixed in position relative to said wall member, said printed circuit including arcuate conductive segments [64, Fig. 3, 84 etc. Fig. 6] disposed at different radial positions relative to said rotor axis of rotation, said wiper means [60, Fig. 5, 80 Fig. 8] comprising a plurality of conductive fingers [72–75, Fig. 5; 102–106, Fig. 8] carried by said rotor member at such different radial positions, said rotor being continuously rotatable through angles greater than 360° in each of said opposite directions.

Claim 6. The switch of claim 1 including resilient detent means [45] engaging a portion of said rotor for resiliently holding said rotor in its said different registration positions.

*The Prior Art*

7. On the issue of validity the defendant relies upon the following prior art patents:

| U. S. Patent No. | Date | Patentee |
|---|---|---|
| 745,081 | Nov. 24, 1903 | Smith |
| 1,555,969 | Oct. 6, 1925 | Hatch |
| 1,564,551 | Dec. 8, 1925 | Gates |
| 2,414,191 | Jan. 14, 1947 | Coon |
| 2,421,881 | June 10, 1947 | Heasty |
| 2,815,586 | Dec. 10, 1957 | MacCheyne |
| 2,853,564 | Sept. 23, 1958 | Gahagan |
| D-188,724 | Aug. 30, 1960 | Powell |

as well as plaintiff's prior art switch Model 7110.

*The Issues*

8. The issues are as to the validity and infringement of claims 1 to 6 in issue.

*The Switch of the Patent in Suit*

9. The switch of claim 1 in issue comprises an outer wall member forming a limited switch actuation region disposed between and bounded by a pair of spaced sloping and diverging outside wall surfaces extending outwardly from the region and located adjacent opposite ends thereof. Located in the region is an open window including a window portion which extends substantially from one to the other of the sloping wall surfaces. The rotor (thumbwheel) is mounted for rotation in either of two opposite directions on an axis anterior of the wall member and the open window portion and beyond 360.° Coupled to the rotor is a switching means for completing a plurality of different electrical circuits. The thumbwheel comprises an operator portion having a plurality of radial members (finger lugs) at least one of which always extends through the open window portion. The finger lugs are sufficiently spaced with respect to each other to permit insertion of a finger tip into the space at either side of each finger lug to permit turning force to be exerted upon the thumbwheel in either of two opposite directions by finger pressure exerted in a direction predominantly cir-

cumferential and predominantly non-radial of said rotor. The finger lugs are inclined to lie generally along both of the pair of sloping wall surfaces at a given time. The sloping surfaces are positioned to intercept a finger engaging one of said finger lugs after the finger lug has moved the thumbwheel in one or the opposite direction into circuit registration position, thereby to cause switching to be effected in a succession of limited arcuate rotor rotations determined primarily by the position of the sloping surfaces relative to the finger engaged one of said finger lugs.

10. Claim 2 in issue adds to the switch of claim 1 an indicia bearing portion positioned to permit the viewing of the indicia thereon through the window.

11. Claim 3 in issue adds to the switch of claim 2 the limitation that the window is substantially T-shaped.

12. Claim 4 in issue adds to the switch of claim 1 the limitation that the switching means includes a printed circuit and a wiper means engaging the printed circuit.

13. Claim 5 in issue adds to the switch of claim 4 the limitation that the printed circuit is carried by a supporting member and includes arcuate conductive segments disposed at different radial positions relative to the thumbwheel axis of rotation and that the wiper means comprises a plurality of conductive fingers and describes the rotor (thumbwheel) as being continuously rotatable through angles greater than 360°.

14. Claim 6 in issue adds to the structure of the switch of claim 1 a spring detent for resiliently holding the thumbwheel in its different circuit registration positions.

### Operation of the Switch of the Patent in Suit

15. The operator places the tip of his finger in the notch on either side of the finger lug located in the window and exerts a circumferential force upon the lug to rotate the thumbwheel one digit spacing. The sloping wall surface in the path of movement of the operator's finger intercepts and stops the movement of the operator's finger after the thumbwheel has been rotated into circuit registration position. After rotation of the thumbwheel into circuit registration position, the spring detent engages a notch between other adjacent finger lugs and holds the thumbwheel in such position. The circuit registration position of the thumbwheel is indicated by indicia carried by the thumbwheel and viewed through a portion of the window.

### Defendant's Switch

16. Considering the defendant's bezel plate as a part of the switch charged to infringe, the switch actuation region is a concave recess formed in such bezel plate and extending rearwardly into an opening formed in an instrument panel. The concave recess is defined by a radius which is constant, such recess being in the form of an arc of a circle with the surface thereof converging outwardly from the bezel. The depth of the recess is equivalent to the thickness of the panel so that when the switch unit is connected to the panel by the U-shaped bracket, substantially the full length of the finger lugs of the thumbwheel will extend outwardly through the large portion of a T-shaped window formed in the bezel for engagement by the operator's finger. The arc of the notches between the finger lugs at a given time are located to the rear of and in spaced relation to the surface of the concave recess. The thumbwheel has formed on one side thereof elongated ribs triangular in cross section and extending radially from and circumferentially with respect to the axis of the thumbwheel. A spring detent disc is fixed to one side of a bracket and is provided with opposite spaced apart detent beads cooperating with the ribs to force the thumbwheel into circuit registration position and to hold the same in such position. The thumbwheel provides an indicia bearing portion with the indicia successively viewable through

the smaller portion of the T-shaped slot. To the thumbwheel is fixed a wiper switch which is adapted to contact a printed circuit on the circuit board. The thumbwheel is rotated in opposite directions and beyond 360°.

### Operation of Defendant's Switch

17. The operator places the tip of his finger between adjacent finger lugs and exerts a circumferential downward or upward pressure on the finger lug in the direction the thumbwheel is to be rotated. The movement of the operator's finger is through the concave recess and his finger is disengaged from the finger lug by the surface of such recess before the thumbwheel is rotated in circuit registration position. Upon such disengagement of the finger, the spring detent beads in cooperation with the detent ribs continues to rotate and force the thumbwheel into circuit registration position and retain such wheel in such position.

### THE ISSUE OF INFRINGEMENT

18. The drawings show and the specification of the patent in suit describes:·

"The surfaces 15a of the front walls slope in directions that extend along the ends of the notch arcs at both ends of the window 25, being about tangential to the ends of the arcs"

of the notches between the finger lugs of the thumbwheel.

19. The relationship between such surfaces and arcs is recited in claims 1 to 6 as

"said radial members [finger lugs] comprising further lugs inclined to lie generally along both of said pair of sloping surfaces at said given time".

20. The finger lugs are inclined to lie generally along both of said pair of sloping surfaces at a given time so that the operator's finger in rotating the thumbwheel will remain in full contact with the finger lug until *after* the operator's finger has rotated the thumbwheel into circuit registration position, at which time movement of the operator's finger is arrested by the sloping surfaces and rotation of the thumbwheel ceases.

21. In defendant's switch the arc of the notch between the finger lugs is not inclined to lie generally along the surface of the concave recess, but is disposed below and spaced from the concave surface of the finger recess whereby the operator's finger will be disengaged from the finger lug of defendant's thumbwheel before the wheel is forced into circuit registration position by the spring detent and detent ribs.

22. In the operation of the switch of claims 1 to 6 in issue, the thumbwheel is rotated into circuit registration position by the operator's finger.

23. In the operation of defendant's switch, the thumbwheel is forced into circuit registration position by stationary spring detent beads with the cooperation of the elongated detent ribs which are carried by and extend radially from the axis of the thumbwheel like the spokes of a wheel and are triangular in cross section.

24. After the thumbwheel of the switch of claims 1 to 6 in issue has been rotated by the operator's finger into circuit registration position, the movement of the operator's finger is intercepted by the sloping wall surfaces to assure accurate circuit registration.

25. Before the thumbwheel of defendant's switch is forced by the spring detent beads with the cooperation of the detent ribs, into circuit registration position, the operator's finger is disengaged from the finger lug by the surface of the concave recess.

26. The use of a spring detent for forcing a thumbwheel of a switch into circuit registration position was condemned by the patentee Wright as impractical.

27. Wright distinguished claims 1 to 6 in issue from the prior art patents to Gahagan 2,853,564 and Hatch 1,555,969 hereinafter referred to, by the fact that, unlike Gahagan and Hatch he did not use a spring detent to force the thumbwheel into circuit registration position, but

rotated the thumbwheel into such position by the force of the operator's finger.

28. In the specification of the patent in suit, Wright points out that the detent does not function to force the thumbwheel into circuit registration position.

29. Rotation of the thumbwheel of defendant's switch into circuit registration position and rotation of the thumbwheel of the switch of claims 1 to 6 inclusive into such position are accomplished in substantially different ways.

30. Of the six claims in issue, only claim 6 includes a detent spring for holding the thumbwheel in circuit registration position. The specification of the patent in suit states that such detent spring may be omitted and that when omitted, "friction" between the various members is relied upon to retain the thumbwheel in circuit registration position.

31. In the switch of each of claims 1 to 5 inclusive, there being no detent spring included, friction between the various members is relied upon to hold the thumbwheel in circuit registration position.

32. Defendant's thumbwheel switches charged to infringe claims 1 to 6 inclusive, do not rely upon friction between the various members to hold the thumbwheel in circuit registration position.

33. Claims 1 to 6 in issue recite:

"an outer wall member of contoured configuration forming a limited switch actuation region disposed between and bounded by a pair of spaced, sloping and diverging outside surfaces, said pair of diverging surfaces extending outwardly from said switch actuation region and being located adjacent opposite ends of said region, said switch actuation region having an open window including a portion extending substantially from one to the other of said sloping surfaces".

34. The outer wall member recited in claims 1 to 6 in issue is the front wall described in the specification of the patent in suit as part of a casing and formed by a pair of spaced wall sections between which is a generally rectangular window of the width of the wall sections and providing a small window portion (slot) through which one of the finger lugs projects at a given time.

35. Considering the defendant's bezel as an outer wall member of defendant's switch, such bezel is a flat plate having formed therein a concave finger recess extending from and to the rear of the plate into an opening formed in an instrument panel.

36. The concave recess of defendant's bezel is defined by a radius which is constant and thus forms the arc of a circle, the surface of which arc converges and is smooth and uninterrupted.

37. A substantially T-shaped finger lug slot is formed in the surface of defendant's bezel. In some instances the slot extends beyond the concave finger recess of the defendant's bezel into the flat surface thereof; others extend to or terminate short of the opposite end of the concave finger recess. Such slot is not disposed between a pair of spaced sloping surfaces formed by a pair of spaced wall sections and between which is located a limited switch actuation region.

38. The term "limited" as used in claims 1 to 6 in issue to describe the switch actuation region, is not described in the specification of the patent in suit.

39. The "limited" switch actuation region of the switch of the patent in suit is the region between the pair of spaced sloping walls 15a–15a.

40. The switch actuation region of defendant's switch is the concave recess which is bounded on all four edges by the flat surface of the bezel plate.

41. By the use in defendant's bezel of a switch actuation region in the form of a concave recess which extends rearwardly into the opening of the owner's instrument panel, the length of the finger lug located in the finger lug slot in the bezel plate is greater than the length of the finger lug were it located in a slot formed in a flat bezel plate. This

results in the finger lug having a length adequate for proper engagement with the tip of the operator's finger.

42. The surface of the concave recess of defendant's bezel does not serve to stop the movement of the operator's finger therethrough.

43. There is no reason and plaintiff has shown none for stopping or arresting the operator's finger in the operation of defendant's switch or what results would be accomplished by stopping the finger. If stopped within the recess, it would render the defendant's switch inoperative.

44. In the switch of claims 1 to 6 in issue, it requires solely the rotatable force of the operator's finger applied to the finger lug of the thumbwheel and the stopping of the movement of the operator's finger by the sloping surfaces, after the thumbwheel has been by the operator's finger rotated into circuit registration position

"to cause switching to be effected in a succession of limited arcuate rotor [thumbwheel] rotations determined primarily by the positioning of said sloping surfaces relative to the finger engaged one of said radial members [finger lugs]".

45. In defendant's switch it requires the rotatable force of the operator's finger applied to the finger lug of the thumbwheel followed by the rotatable force of the spring detent in cooperation with the detent ribs, after the operator's finger has been disengaged from the finger lug by the surface of the concave recess, to cause switching to be effected in a succession of limited arcuate thumbwheel rotations determined by the action of the spring detent in cooperation with the detent ribs.

■ 46. Plaintiff has failed to establish infringement and/or to sustain the burden of proving infringement.

### THE ISSUE OF VALIDITY

47. Each of claims 1 to 6 in issue in terms of "function" recites that the rotor [thumbwheel] is "mounted for rotation in either of two opposite directions and on an axis located anterior of said wall member [outer wall member] and open window", and claim 5 further recites that the thumbwheel is rotatable "through angles greater than 360° in each of said opposite directions."

48. The stated objects of the claimed invention and the asserted distinction of the alleged invention from the prior art shows that an essential point of novelty of the claimed invention is the mounting of the thumbwheel upon an axis anterior of the outer wall member and the open window for rotation in opposite directions and beyond 360°.

49. No means is recited in the claims in issue for mounting the thumbwheel for rotation in either of two opposite directions or through angles greater than 360°.

50. § 112, paragraph 2, 35 U.S.C., of the 1952 Patent Act, requires that the specification of a patent conclude with one or more claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention".

■ 51. By failing to include in the claims "means" for performing the function recited in the claims, such claims violate § 112, paragraph 2, of the 1952 Patent Act and are therefore invalid.

■ 52. The recitation in the claims in issue of "said radial members comprising lugs" and the subsequent recitation in said claims of "one of said radial members comprising a lug", constitutes a double inclusion which renders the claims ambiguous and in violation of Section 112, paragraph 2, of the 1952 Patent Act.

Re Switch Model 7110 and

Gates Patent 1,564,551

53. The plaintiff's switch Model 7110 was known to the patentee Wright prior to the development of the switch of the claims in issue.

54. All the elements of parent claim 1, with the exception hereinafter noted, and their respective functions are found in

the switch Model 7110 constructed in late 1957 or early 1958, more than one year prior to the filing of the application on which the patent in suit issued.

55. The patentee Wright does not claim to have invented the switch Model 7110.

56. Switch Model 7110 and the switch of claim 1 in issue each comprise: an outer wall member providing a switch actuation region having therein an open window, a thumbwheel including an operator portion comprising spaced finger lugs between which are notches of sufficient size to receive the tip of the operator's finger. Each thumbwheel carries for rotation therewith a switching means for completing a plurality of different electrical circuits. Each switch has a window including a window portion (slot). The finger lugs of each switch at a given time are located in the slot. Each switch includes a spring detent for holding the thumbwheel in circuit registration position. The spring detent of switch Model 7110 also serves to force the thumbwheel into circuit registration position. The thumbwheel of each switch is rotatable in opposite directions and through more than 360°.

57. In the operation of switch Model 7110 and the switch of claim 1 in issue, the operator places his finger in the notch between adjacent finger lugs and by non-radial and circumferential force exerted on the finger lug, the thumbwheel is rotated one digit spacing. The surface of the outer wall of switch Model 7110 disengages the operator's finger from the finger lug *before* the thumbwheel is in circuit registration position. The thumbwheel is forced into and held in circuit registration position by the spring detent. In the switch Model 7110 the outer wall which intercepts the operator's finger, is flat. Such switch does not, as does the switch of claim 1, utilize sloping wall surfaces between which the switch actuation region is located, to intercept and stop the movement of the operator's finger *after* the thumbwheel is in circuit registration position.

58. The Gates patent 1,564,551 shows and describes in a switch an outer wall member of a configuration forming a limited switch actuation region disposed between and bounded by a pair of spaced sloping and diverging outside surfaces extending outwardly from and adjacent to the opposite ends of the switch actuation region.

59. The outer wall configuration of Gates is substantially the same as the outer wall configuration of the switch of claims 1 to 6 in issue, accomplishing the same result in the same way and serving the same purpose as the outer wall configuration of the switch of claims 1 to 6, in that the outer wall configuration of the Gates switch and the switch of claims 1 to 6 both serve to intercept and stop the movement of the finger of the operator to determine the proper degree of rotary movement of the thumbwheel and to assure proper operation of the switching means.

60. The outer wall configuration of Gates can be substituted for the outer wall of switch Model 7110 without any change or modification.

61. The claims in issue do not spell out the shape or size of the finger lugs nor do such claims exclude the use of knurled finger lugs. The finger lugs of switch Model 7110 are responsive to the finger lugs of the claims in issue.

62. The switch Model 7110 considered with Gates teaches the combination claimed by claim 1.

63. A mechanic skilled in the art with the switch Model 7110 and the Gates patent before him, is taught the combination of claim 1 without reference to or aid from the patent in suit.

64. At the time of the claimed invention, it was obvious to a mechanic skilled in the art that the Gates sloping surfaces or finger stops could be added to plaintiff's prior art switch Model 7110 and thereby produce a switch which is both substantially structurally and functionally responsive to claim 1.

65. Claim 1 in issue does not define invention in view of the teaching of

## 650

plaintiff's prior art switch Model 7110 considered in the light of the Gates patent.

■ 66. As the switch Model 7110 was not before the Patent Office Examiner during the examination of the application of the patent in suit, nor was his attention called to such Model 7110 by the applicant Wright, the statutory presumption of validity of the patent in suit does not prevail over switch Model 7110 alone or considered with the Gates patent.

■ 67. The fact that the switch Model 7110 was not commercially successful does not render it any the less a valid prior reference against claims 1 to 6 in issue.

■ 68. Claim 1 in issue is invalid for lack of invention in view of the prior art switch Model 7110 considered in the light of the teachings of the Gates patent 1,564,551.

*Re Smith Patent 745,081*

69. The Smith patent relates to a combination lock. Smith teaches the use of an outer wall of a configuration forming a concave finger recess having an actuation region, a window portion (slot), a rotor (thumbwheel) rotatable in either of two opposite directions and having finger lugs (teeth) spaced apart to receive therebetween the tip of a finger and rotatable by finger pressure exerted in a direction circumferentially and non-radial. One of the lugs (teeth) at a given time is located centrally in the window portion, and adjacent lugs lie generally along the surface of Smith's concave finger recess.

70. The Smith concave finger recess, as does the sloping wall surfaces of the switch of parent claim 1, intercepts the operator's finger to limit the rotation of the thumbwheel to one step at a time and to assure accurate setting of the wheel.

71. The Smith patent does not disclose a switch means. Such a means is described in the Hatch patent 1,555,969 relating to a keyless lock. Such a means is also shown in the Gahagan patent

2,853,564 and in the prior art switch Model 7110.

72. The function of the sloping walls recited in claims 1 to 6 inclusive does not depend upon the inclusion of a switching means; such walls perform their respective function irrespective of whether they are associated with a switch or any other device.

73. The Smith patent and the Gahagan patent teach all that is claimed by claim 1.

74. The Smith patent is a proper reference to be considered in connection with the application of the rule of obviousness (§ 103, 35 U.S.C., of the 1952 Patent Act).

75. At the trial of this case, plaintiff made no objection to the receipt in evidence of the Smith patent.

76. During prosecution of the application on which the patent in suit issued, the Hatch patent which relates, as does the Smith patent, to a keyless lock, was used by the Patent Office Examiner as a principal as well as a secondary reference in the rejection of a large number of application claims, without any objection by the applicant Wright to its use as a reference on the grounds of non-analogous art.

77. Objection to the use of the Smith patent as a reference against the claims in issue on the grounds of ncn-analogous art, was raised by plaintiff for the first time in its after-trial brief filed in this case.

78. Under the foregoing circumstances, plaintiff is estopped from raising the question of non-analogous art as to the Smith patent.

79. In the Smith patent and in the patent in suit, the object to be accomplished is a proper setting of the thumbwheel.

80. Such proper setting in the Smith patent and the patent in suit is accomplished in substantially the same manner, to-wit: in Wright by the interception of the finger by the sloping walls; in Smith by the interception of the finger by the surface of the concave recess.

81. In both the Smith patent and the patent in suit, an object was to limit the movement of the operator's finger to one digit spacing at a single operation. In Smith this is accomplished by providing a concave finger recess; in the Wright patent this is accomplished by providing finger stops at opposite ends of the switch actuation region.

82. The concave recess of the Smith device performs the same function as the switch actuation region of the switch of the patent in suit in so far as each intercepts the operator's finger to assure accurate setting of the thumbwheel.

83. In both the Smith device and the switch of the patent in suit, the thumbwheel has finger lugs which are successively located in a finger receiving recess in the path of movement of the operator's finger; in both devices, the finger engaged lug is limited in its rotation.

84. The elements and the purpose of the Smith device are related and similar to the elements and purpose of the switch of claim 1 in issue.

85. As the Smith patent was not considered by the Patent Office Examiner in the prosecution of the Wright application, the statutory presumption of validity does not apply to the patent in suit.

86. Claim 1 in issue is invalid for lack of invention in view of the prior art patent to Smith 745,081 considered in the light of the Gahagan patent 2,-853,564 or switch Model 7110.

*Re Gates Patent 1,564,551 and Smith Patent 745,081*

87. The Gates patent relates to a switch which embodies an outer wall of a configuration which in all respects is structurally and functionally the same as the outer wall member of claim 1, in that it forms a limited switch actuation area disposed between and bounded by a pair of spaced sloping and diverging outside wall surfaces (shoulders) extending outwardly from the switch actuation region and located adjacent opposite ends of such region.

88. The Gates shoulder, like the sloping wall surfaces of claim 1, is located in the path of a thumb engaging a projection of the Gates thumbwheel to effect one step rotation of the Gates switch blade and thereby determine the proper degree of movement of the thumbwheel to assure, as in the switch of claim 1, proper operation of the switching means.

89. The thumb disc of Gates rotates in one direction only and by reason thereof claim 1 was distinguished from the Gates patent when the application of Wright was before the Patent Office Examiner.

90. The Smith patent as well as the Heasty patent 2,421,881 and the plaintiff's prior art switch Model 7110, each show and teach thumbwheels rotatable in opposite directions of rotation.

91. The outer wall configuration of the Gates device, without any change in function or structure, is adaptable for use with a switch like plaintiff's prior art switch Model 7110 and like that shown in the Heasty patent, where the thumbwheel is rotatable in opposite directions of rotation.

92. The adaptation of the shoulders of the outer wall configuration of the Gates patent to the outer wall of the switch Model 7110, requires only mechanical skill and would be obvious to a mechanic skilled in the art at the time of Wright's claimed invention.

*Re Claims 2 to 6 in issue*

93. Claims 2 to 6 inclusive are invalid for lack of invention and on the grounds of obviousness in view of switch Model 7110 considered in the light of the teachings of either Gates or Smith, on the same basis and for the same reasons as found with respect to claim 1 in issue.

94. The respective structures, functions, and results recited in dependent claims 2 through 6 in issue were per se all old and known in the switch art long prior to Wright's claimed invention and therefore unpatentable; thus, to add to the invalid parent claim 1 by way of dependency these unpatentable structures and functions does not produce a patent-

able combination or establish validity in claims 2 to 6 inclusive.

95. The function and result of the switch of invalid parent claim 1 is in no way changed, altered or modified by the addition of the limitation of claims 2 to 6 thereto; the switch of claim 1 performs its same functions in the same way as it did before the limitations of claims 2 to 6 were added thereto.

96. The patent to MacCheyne 2,815,-586 as well as plaintiff's prior art switch Model 7110 each show and teach the use in a switch of an indicia bearing portion rotatable with a thumbwheel, and a window for viewing such indicia as recited in claims 2 and 3 in issue.

97. The patent to Gahagan and the plaintiff's prior art switch Model 7110 each show and teach the use in a switch of a printed circuit or its equivalent, carried by a supporting member and engageable by a wiper switch rotatable with a thumbwheel as recited in claims 4 and 5 in issue.

98. The plaintiff's prior art switch Model 7110 shows and teaches a thumbwheel rotatable through angles greater than 360° in opposite directions.

99. The prior art shows it to be notoriously old to use in a switch a spring detent to hold a thumbwheel in circuit registration position as is recited in claim 6 in issue.

100. The obviousness at the time of Wright's invention, of the use of the limitations added by dependent claims 2 to 6 in issue to invalid parent claim 1, in switches for the identical function and purpose, clearly rebuts the statutory presumption of validity which arises by virtue of the granting of the patent in suit.

*Re Defense of Aggregation*

101. To substitute the Gates outer wall member for the outer wall member of the prior art switch Model 7110 not only fails as an invention but is a mere aggregation of known elements each performing their respective functions in the claimed combination as they did in the prior art, and producing no new or different result than that theretofore produced or performed by them.

102. The limitations added by claims 2, 4 and 6 to invalid parent claim 1, and the limitations of claims 3 and 5 added to claims 2 and 4 respectively, are fully and completely anticipated by the prior art and when added to such claims perform no new or different function or accomplish any different result or change or modification in the operation of the switch of the claims to which they are added.

103. Adding the structural and functional limitations of dependent claims 2 to 6 to invalid parent claim 1, is a mere aggregation of old parts.

*Re Alleged Commercial Success*

104. Plaintiff relies upon alleged commercial success of the switch of the patent in suit as being evidence of invention.

105. In the operation of the switch of the patent in suit, the patentee relied upon friction to hold the thumbwheel in circuit registration position. Plaintiff produced no evidence that it ever made or sold such a switch.

104. Claims 1, 4, 5 and 6 do not include in the switch claimed an indicia bearing portion and a viewing window. Plaintiff adduced no evidence that it ever made and sold such a switch.

105. Plaintiff's alleged commercial success cannot be attributable to the patented switch upon the claim that the thumbwheel is limited to one digit spacing in a single operation. The patent in suit shows and describes that the thumbwheel can be rotated more than one digit spacing in a single operation. In fact, plaintiff sold its Model Series 600 in which the rotation of the thumbwheel is not limited to one digit spacing in a single operation.

106. The plaintiff's commercial switch embodies features not included in the switch of the claims in issue. For example, the plaintiff's commercial switch includes the design of Patent D-188,724; a sealed compartment in which the circuit board and wiper switch are

sealed against dust, sand and moisture; the number of selector positions in the thumbwheel; claims 7 to 11, not here in issue, are concerned with the structure for mounting a plurality of switches together as a unit; claims 1 to 6 in issue are not concerned with that feature.

107. Plaintiff spent a large sum of money in printing brochures which were distributed very extensively.

108. Plaintiff's commercial switch was displayed at trade shows which were well attended and where the plaintiff's commercial switch was emphasized by plaintiff's representative.

109. Plaintiff's brochures emphasized many features that are not in the switch of the claims in issue; for example, the "sealing" feature and the fact that "no separate escutcheon plate or cover plate is necessary". Plaintiff's Series 600 is especially emphasized.

110. Plaintiff produced no records or other documents in verification of the sales listed on the sales chart.

111. Such chart shows that during the period of 1959 to 1963 there was no crying demand for the plaintiff's commercial switch and that there was no immediate adoption by the trade of such switch.

112. The increase in sales in 1964 and 1965 was due to an extensive distribution of brochures describing and illustrating features not included in the switch of claims 1 to 6 in issue.

113. During the period of 1961 and 1962, defendant was selling its T Series switch, the sale of which was not affected by the sale of plaintiff's commercial switch.

■ 114. Plaintiff adduced no evidence that the alleged commercial success was attributable to the switch of claims 1 to 6 inclusive rather than features not included in the switch defined by such claims.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the subject matter and the parties to this action.

*Re Issue of Infringement*

■ 2. The burden is on the plaintiff to prove infringement by a preponderance of evidence. Becker v. Webcor, Inc., 289 F.2d 357, 360 (CA 7); Fife Mfg. Co. v. Standard Eng. Co., 299 F.2d 223 at 226 (CA 7); United States Rubber Co. v. General Tire & Rubber Co., 128 F.2d 104 at 108 (CA 6).

■ 3. Infringement is not made out by a word-by-word comparison between the claims in issue and the accused device; there must be real identity of means, operation and result. Skirow v. Roberts Colonial House, Inc., 361 F.2d 388 at 390 (CA 7) (1965); North Star Ice Equipment Co. v. Akshun Mfg. Co., 301 F.2d 882 at 886 (CA 7); Weil Pump Co. v. Chicago Pump Co., 74 F.2d 13 at 17 (CA 7).

■ 4. Infringement should not be determined by comparison of plaintiff's commercial device with defendant's commercial device. It should be determined by a reading of the claims on the accused device in the light of the patent in suit, the prior art, and the file history of such patent. Graham v. John Deere Co., 383 U.S. 1 at 24, 86 S.Ct. 684, 15 L.Ed.2d 545; Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211 at 217, 61 S.Ct. 235, 85 L.Ed. 132; Atkins v. Gordon, 86 F.2d 595 at 596 (CA 7); Skirow et al. v. Roberts Colonial House, Inc., 361 F.2d 388 at 390 (CA 7); North Star Ice Equipment Co. v. Akshun Mfg. Co., 301 F.2d 882 at 886 (CA 7); Scherbatsky v. U. S. Steel Corp., 287 F.2d 552 at 556 (CA 7); Peters & Russell v. Dorfman, 188 F.2d 711 at 713 (CA 7); Bauer v. Yetter Mfg. Co., Inc., D.C., 205 F.Supp. 904 at 909, aff. 315 F.2d 377 (CA 7).

■ 5. A patentee should not be permitted to claim infringement of a device embodying that which he relied upon to distinguish from the prior art. Skirow et al. v. Roberts Colonial House, Inc., 361 F.2d 388 at 390 (CA 7); Fife Mfg. Co. v. Standard Eng. Co., 299 F.2d 223 at 226 (CA 7).

6. Claims 1 to 6 inclusive are not infringed by defendant's switches.

**654**

7. The relevant statutes to be considered in this action are Title 35 U.S.C., Sections 101, 102(b), 103, and 112.

■ 8. The test of invention is novelty, utility and non-obviousness. Graham v. John Deere Co., 383 U.S. 1 at 12, 86 S.Ct. 684, 15 L.Ed.2d 545.

■ 9. A claim of a patent which defines an alleged point of novelty of the claimed invention in terms of function rather than means, is invalid as failing to comply with 35 U.S.C. § 112, Paragraph 2, of the 1952 Patent Act. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364 at 361, 58 S.Ct. 899, 82 L.Ed. 1402; Mead Johnson & Co. v. Hillman's, Inc., 135 F.2d 955 at 957 (CA 7); Gynex Corp. et al. v. Dilex Institute of Feminine Hygiene, 85 F.2d 103 at 105, Par. 1 (CA 2); Koehring Company v. National Automatic Tool Co., Inc., 257 F.Supp. 282 at 287 (D.C.Ind., 1966); In re Laurent, 186 F.2d 741, 38 CCPA 811.

10. Double inclusion of elements in a claim makes such claim vague, indefinite, and lacking the "particularly pointing out and distinctly claiming" requirement of 35 U.S.C. § 112. Simmons Co. v. A. Brandwein & Co., 111 USPQ 171 (D.C.Ill., aff. 250 F.2d 440 [CA 7]).

11. Section 112, paragraph 2, 35 U.S.C. provides that "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention. * * "

■ 12. One indefinite clause in a claim renders such claim as a whole, indefinite. Ex parte Wiegand and Venuto, 61 USPQ 97 at 99, Par. 5.

■ 13. It is enough to defeat a patent under 35 U.S.C. § 103 that from one or more related prior art patents, one having ordinary skill in the art would find the claimed invention as a whole obvious at the time it was made. Graham v. John Deere Co., 383 U.S. 1 at 24, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); T. P. Laboratories, Inc. v. Huge, 371 F.2d 231 (CA 7; dec. Nov. 28, 1966); Skirow et al. v. Roberts Colonial House, Inc., 361 F.2d 388 at 390 (CA 7); Senco Products, Inc. v. Fastener Corp. et al., 269 F.2d 33 at 34 (CA 7); Kell-Dot Industries, Inc. v. Graves, 361 F.2d 25 at 30 (CA 8).

■ 14. The subject matter of a claimed invention may be unpatentable over the prior art notwithstanding the fact that all elements of the claim are not combined in one particular prior art reference and notwithstanding the fact that no one prior patent or publication or device teaches the exact specific form of device disclosed in the claim, if the alleged improvement is taught by the prior art as a whole. Graham v. John Deere Co., 383 U.S. 1 at 24, 86 S.Ct. 684, 15 L.Ed.2d 545; Skirow et al. v. Roberts Colonial House, Inc., 361 F.2d 388, at 390 (CA 7); Akron Brass Co. v. Elkhart Brass Mfg. Co., 353 F.2d 704 at 706 (CA 7); Koehring Company v. E. D. Etnyre & Co., Inc., 254 F.Supp. 334 at 361 (D.C.Ill.,1966); In re Cussons & Dewar, 354 F.2d 384 at 387 (CCPA 1966).

■ 15. If the prior device has been reduced to practice, then it can negative novelty even though it is subsequently abandoned. Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406 at 416 (CA 6); In re Helmond, 118 F.2d 574 at 576, 28 CCPA 1013; Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; Rosaire v. Baroid Sales Div., National Lead Co., 218 F.2d 72 (CA 5); Picard v. United Aircraft Corp., 128 F.2d 632 (CA 2).

■ 16. The acceptance by the patentee Wright and his assignee (plaintiff here) of the Hatch patent 1,555,564 relating to a keyless lock, cited by the Patent Office as a reference against the application on which the patent in suit issued, and the admission, without objection by plaintiff, in evidence at the trial of this case of the Smith patent 745,081 also relating to a keyless lock, as prior art against the claims in issue,

estops plaintiff from objecting for the first time in its after-trial brief that the Smith patent is non-analogous art. Graham v. John Deere Co., 383 U.S. 1 at 35, 86 S.Ct. 684, 15 L.Ed.2d 545; Smith v. Springdale Amusement Park, 39 F.2d 92 at 97 (CA 6).

■ 17. Even though it should be held that patents relied upon by a defendant as prior art are in a non-analogous art, nevertheless their disclosures may not be ignored. Allied Wheel Products, Inc. v. Rude, 206 F.2d 752 at 756 (CA 6); Skee Trainer, Inc. v. Garelick Mfg. Co., 361 F.2d 895 at 898 (CA 8, 1966); In re O'Connor, 161 F.2d 221 at 222.

■ 18. The test of whether a patent is analogous art is whether the elements and purpose in one art are related and similar to those in another art and by reason thereof they make an appeal to the mind of a person having ordinary skill and knowledge. Mandel Bros., Inc. v. Wallace, 335 U.S. 291 at 296, 69 S.Ct. 73, 93 L.Ed. 12; A. J. Deer Co., Inc. v. U. S. Slicing Mach. Co., 21 F. 2d 812 at 813 (CA7); Allied Wheel Products, Inc. v. Rude, 206 F.2d 752 at 756 (CA 6); Dunham Co. v. Cobb, 19 F.2d 328 (CA 6).

19. The trend of modern decisions including those of the United States Supreme Court is to widen the scope of the prior art which can be considered pertinent. Mandel Bros., Inc. v. Wallace, 335 U.S. 291 at 296, 69 S.Ct. 73, 93 L.Ed. 12; Borkland v. Pederson, 244 F.2d 501 at 503 (CA 7); Allied Wheel Products, Inc. v. Rude, 206 F.2d 752 at 753 (CA 6); In re Kylstra, 87 F.2d 487 at 488.

■ 20. The title or name given to an invention, as in the introductory clause, cannot be used to distinguish the claimed invention from another. Nye Tool & Machine Works v. Crown Die & Tool Co., 292 F. 851 at 853 (CA 7).

■ 21. Neither the presumption of validity of a patent nor commercial success of the patented product should be permitted to override a clear convic-

tion of invalidity, especially with respect to prior art devices and patents not considered alone or in view of patent references not considered by the Patent Office Examiner. Skirow et al. v. Roberts Colonial House, Inc., 361 F.2d 388 at 390 (CA 7); Senco v. Fastener Corp., 269 F.2d 33 at 34 (CA 7); T. P. Laboratories, Inc. v. Huge, 371 F.2d 231 (CA 7; dec. Nov. 28, 1966); Century Industries v. Wieboldt Stores, 263 F.2d 934 at 937 (CA 7); Hobbs v. Wisconsin Power & Light Co., 250 F.2d 100 at 105 (CA 7); Schreyer v. Chicago Motocoil Corp., 118 F.2d 852 at 857 (CA 7); Siekert and Baum Stationery Co. v. Stationers Loose Leaf Co., 51 F.2d 326 at 329 (CA 7).

### Re Commercial Success

■ 22. Alleged commercial success is not a substitute for invention. Milton Mfg. Co. v. Potter Weil Corp., 327 F.2d 437 at 441 (CA 7); Goldman v. Bobins, 245 F.2d 840 at 844 (CA 7); Circle S Products Co. v. Powell Products Co., 174 F.2d 562 at 564 (CA 7).

■ 23. The alleged commercial success must be shown to have been attributable to the device as claimed. See cases cited under C.L. 22, supra. Schreyer v. Chicago Motocoil Corp., 118 F.2d 852 at 857 (CA 7); T. P. Laboratories, Inc. v. Huge, 371 F.2d 231, (CA 7; dec. Nov. 28, 1966); Morrison v. Coe, 74 App. D.C. 335, 122 F.2d 793 at 794.

### Re Aggregation

■ 24. Bringing together several old devices without producing a new and useful result, which is the joint product of the elements of the combination and something more than the aggregation of the old results, is not invention. Toledo Pressed Steel Co. v. Standard Parts, 307 U.S. 350 at 356, 59 S.Ct. 897, 83 L.Ed. 1334; Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545 at 549, 58 S.Ct. 662, 82 L.Ed. 1008; Orr v. Skilsaw, Inc., 124 F.2d 751 at 753 (CA 7); Curtis Companies, Inc. v. Mas-

ter Metal Strip Service, Inc., 125 F.2d 690 at 692 (CA 7).

25.   Claims 1 to 6 inclusive are each invalid.

26.   The complaint herein should be dismissed with costs to defendant.